## FALL TERM 1978

IN THE MATTER OF THE ORDINANCE OF ANNEXATION NO. 1977-4

No. 7

(Filed 28 November 1978)

1. **Municipal Corporations § 2.4— challenge to annexation ordinance—burden of proof**

    The party challenging an annexation ordinance has the burden of showing error by competent and substantial evidence.

2. **Municipal Corporations § 2.6— annexation of air base—provision of services if federal government ceased to do so**

    In an action to invalidate a city ordinance annexing Seymour Johnson Air Force Base containing 3157 acres and a subdivision containing 59.25 acres, the evidence was sufficient to support the trial court's findings that respondent city could provide police protection, fire protection, garbage collection service and street maintenance for the annexed areas in the event the federal government ceased to provide such services to the air base, and that the city had sufficient monies to do so where the city manager testified that the city could provide police protection for the air base from several sources of revenue, and that the city could also provide fire protection to the air base although it would mean a diminished level of services throughout the city; the city finance officer testified that in his opinion the city could provide all municipal services to the air base should the federal government terminate those services, and that the city was in relatively sound financial condition, having some fifty sources of revenue which it could use for all city purposes; and the record shows that for the first year following annexation the increased cost to the city would be only $2,053 while the increased revenue would be $230,624, and that the city had previously extended major trunk water mains and sewage lines to the boundaries of the air base property.

In re Annexation Ordinance

3. **Municipal Corporations § 2.6— annexation—revenues to provide services**

In this action to invalidate a city ordinance annexing Seymour Johnson Air Force Base containing 3157 acres and a subdivision containing 59.25 acres, the evidence was sufficient to support the court's finding that respondent city had sufficient revenues to provide all required services in substantially the same manner as such services were provided within the rest of the city prior to annexation where there was clear evidence that the city was able to provide comparable services to the 59.25 acre area; there was evidence that the federal government would continue to render police and fire protection and water, sewer and street maintenance service on the air base that was comparable to that rendered by the city in other parts of the city; and there was evidence that the city was financially able to render services on the air base in the event the federal government should cease doing so.

4. **Municipal Corporations § 2.2— annexation—development for urban purposes—population—consideration of military personnel**

In determining whether an area to be annexed had a total resident population of two persons per acre and thus was developed for urban purposes within the meaning of G.S. 160A-48, a person was properly counted as a member of the total resident population if such person would have been counted as an inhabitant of the proposed area of annexation under rules governing the last preceding decennial census. Therefore, military personnel living on the air force base in the area to be annexed were properly counted in determining the population estimate required by G.S. 160A-48, since persons living on military bases as members of the armed forces were counted in the 1970 census as residents of the states, counties, and minor civil divisions in which their installations were located.

5. **Trial § 6— extent of stipulation—intent and circumstances of parties**

In determining the extent of a stipulation, the intent of the parties and their circumstances at the time the stipulation was signed must be examined to ensure that the language of the stipulation will not be construed to effect an admission of a fact which was intended to be controverted.

6. **Municipal Corporations § 2.6— annexation of air base—duplication of services not required—contingent budgeting not required**

In annexing an area which included an air force base, there was no requirement that the city duplicate services provided on the base by the federal government, and the city was not required to have funds budgeted to provide municipal services to the base in the event that the federal government ceased providing those services.

7. **Municipal Corporations § 2— authority to annex federal property**

An air force base owned by the federal government was subject to annexation by a city where the annexation did not interfere with federal jurisdiction and was not for the sole purpose of generating revenue.

8. **Municipal Corporations § 2— annexation of air base—no local taxation of military personnel—no unconstitutional classes**

The annexation of Seymour Johnson Air Force Base by the City of Goldsboro did not create unconstitutional tax classes because Congress has exempted military personnel from local taxation.

APPEAL by petitioner Charles Dail pursuant to G.S. 160A-50(h) from *Canaday, J.,* October 17, 1977 Civil Session, WAYNE Superior Court.

The judgment from which petitioner appeals affirms action of the Board of Aldermen of the City of Goldsboro, North Carolina, annexing certain territory to said city. The amended judgment contains findings of fact, conclusions of law and adjudication set forth in pertintent part as follows:

## FINDINGS OF FACT

1. On December 7, 1976, the Board of Aldermen of the City of Goldsboro passed a resolution, Resolution No. 1976-221, stating its intent to consider the annexation of property known as the Seymour Johnson Air Force Base owned by the United States of America which contains 3157 acres and portions of the Emmett Reeves Subdivision containing 59.25 acres, which areas were fully and accurately described in said Resolution. . . .

2. On December 20, 1976, the Board of Aldermen of the City of Goldsboro at a regular meeting heard from opponents to said annexation. At said meeting, a report prepared by the Department of Planning of the City of Goldsboro, in accordance with G.S. 160A-47, in connection with the proposed annexation of the Seymour Johnson Air Force Base area was presented to the Board of Aldermen. . . .

3. The Petitioners and the Respondent stipulated and agreed that, prior to the adoption of the Ordinance of Annexation, the City of Goldsboro, published the notice of public hearing as required by G.S. 160A-49, and no question is raised as to said publication.

4. The Petitioners and the Respondent have stipulated and agreed that, prior to the adoption of the Ordinance of Annexation, the City of Goldsboro prepared the report required by G.S. 160A-47, and said official body duly approved the same as required by G.S. 160A-49(c), and no question is raised as to the procedural steps leading to the adoption of said report.

5. On January 17, 1977, a public hearing, as required by G.S. 160A-49, was held at the regular meeting of the Board of Aldermen of the City of Goldsboro. At said meeting, the Director

of Planning of the City of Goldsboro presented an explanation of the report required by G.S. 160A-47. At said public hearing, all interested persons were given an opportunity to be heard, including residents and property owners of the City, residents and property owners of the area proposed to be annexed, and residents and property owners of the area lying outside of the City and outside of the area proposed to be annexed. The Petitioners, through their attorney, spoke in opposition to said proposed annexation.

6. On February 7, 1977, at a regular meeting of the Board of Aldermen of the City of Goldsboro, the Board of Aldermen of the City of Goldsboro duly adopted an Ordinance of Annexation, Ordinance No. 1977-4, which fully complies with all requirements of G.S. 160A-49(e). That under said Ordinance, the effective date of said annexation was February 7, 1977.

7. The Petitioners and the Respondent have stipulated and agreed that there is no dispute as to the metes and bounds description of the area to be annexed as contained in the map prepared by the City of Goldsboro or in the metes and bounds description as set forth in the Ordinance of Annexation. That the area annexed by the Ordinance of Annexation contains 3216.25 acres, including 59.25 acres which is privately owned and which lies between Seymour Johnson Air Force Base and the boundaries of the City of Goldsboro as they existed prior to February 7, 1977. That 3157 acres of the area annexed embraces Seymour Johnson Air Force Base and is owned by the United States of America.

8. The 3157 acres constituting the area known as Seymour Johnson Air Force Base is a military base owned by the United States of America, and said area adjoined the City of Goldsboro prior to February 7, 1977. Seymour Johnson Air Force Base is the headquarters of the Fourth Combat Support Group — Tactical Air Command and the 68th Bombardment Wing. On February 7, 1977, there were located in the 3157 acre area known as Seymour Johnson Air Force Base 1,000 housing structures and an estimated 8,827 persons who resided within said area. These persons were either military personnel or dependents of military personnel. Military personnel are subject to military orders as prescribed by the United States Air Force.

In re Annexation Ordinance

9. On or about Feburary 7, 1977, there was located within the 59.25 acre tract seven housing structures and an estimated 25 persons.

10. The Petitioner, Charles E. Dail, is a citizen and resident of the City of Goldsboro, and resides within a portion of the area annexed. Said Petitioner resides within the 59.25 acre tract and owns a house and lot at 807 South Randolph Street. He is a person owning property within the meaning of G.S. 160A-50. Since the passage of the Ordinance of Annexation on February 7, 1977, the real and personal property of Charles E. Dail at 807 South Randolph Street, Goldsboro, North Carolina, has been subject to all debts, laws, ordinances and regulations of the City of Goldsboro.

11. In apt time as provided for in G.S. 160A-50 the Petitioners, Charles E. Dail and Hans A. Staps, filed a petition for review and served copies of the same upon the City of Goldsboro by registered mail, return receipt requested.

12. The United States of America, the owner of said 3157 acres, did not petition the Court under G.S. 160A-50 to review this annexation and has not questioned its validity or protested said annexation.

13. The Petitioners, Charles E. Dail and Hans A. Staps, through counsel and in open court, in addition to the written stipulations, stipulate and agree that the City of Goldsboro has followed the statutory procedures within the meaning of G.S. 160A-50(f)(1) and that no objections are raised in this regard.

14. The City of Goldsboro, within the time required by law, transmitted to the Superior Court a transcript of that portion of the City's Minute Book in which the procedure for annexation had been set out and a copy of the report setting forth the plans for extending services to the annexed area as required by G.S. 160A-47. The report of the proceeding so certified was admitted as evidence and duly considered by the Court as a part of the record.

15. The evidence showed plans to provide services to the area annexed within the meaning of the statutory requirements:

(a) The maps of the municipality and the area to be annexed were introduced showing the present and proposed boundaries of the municipality and the present major trunk water mains and sewers interceptors and outfall and extensions thereof. Further,

said maps showed the general land use patterns in the area to be annexed.

(b) The City of Goldsboro extended police protection to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. The City of Goldsboro has concurrent jurisdiction with the United States of America within the 3157 acre tract owned by the United States of America. The City of Goldsboro exercises its criminal jurisdiction over civilian personnel for violation of criminal laws committed within the 3157 acre tract, but it has no jurisdiction over the military personnel located thereon. The City of Goldsboro has employed five (5) additional police officers, and since February 7, 1977, it has provided police protecton to the 59.25 acre tract and the 3157 acre tract. That in the event the United States of America shall cease to provide police protection, the City of Goldsboro would provide said service provided it had the jurisdiction to act accordingly. The City of Goldsboro has sufficient monies to provide and finance said service.

(c) The City of Goldsboro extended fire protection to the area to be annexed and has provided said protection since February 7, 1977, on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. That the United States Government maintains its own fire department on Seymour Johnson Air Force Base, and the City of Goldsboro has a mutual aid agreement with Seymour Johnson Air Force Base. That for military and security reasons, the United States of America has not called upon the City of Goldsboro to provide fire protection in the 3157 acre tract. In the event the United States of America shall cease to provide fire protection on Seymour Johnson Air Force Base, then the City of Goldsboro would provide this service. The City of Goldsboro has sufficient monies to provide and finance said service.

(d) The City of Goldsboro extended garbage collection to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. Since February 7, 1977, garbage collection has been provided in the 59.25 acre tract by the City of Goldsboro. The United States of America has provided its own garbage collection service on

Seymour Johnson Air Force Base and has not requested the City of Goldsboro to provide said service. That in the event the United States of America shall cease to provide said service, then the City of Goldsboro would provide this service. The City of Goldsboro has sufficient monies to provide and finance said service.

(e)  The City of Goldsboro is providing street maintenance to the area to be annexed and has provided said service since the date of annexation on substantially the same basis as that provided within the rest of the municipality. In said 59.25 acre tract there are several unpaved streets which the City of Goldsboro has repaired and has maintained on substantially the same basis as it has maintained other streets within the City of Goldsboro. Prior to February 7, 1977, Randolph Street was impassable, and the City of Goldsboro has repaired said street since February 7, 1977. All of the streets in the 3157 acre tract owned by the United States of America are private ways and have not been dedicated as public streets and as such are not maintained by the City of Goldsboro. In the event the United States of America dedicated said streets to public use, then the City of Goldsboro would maintain said streets on the same basis as other streets within the City of Goldsboro. The City of Goldsboro has sufficient monies to provide and finance said service.

(f) On February 7, 1977, there existed a water distribution system in the area to be annexed which provides fire protection on substantially the same basis and in the same manner as that provided within the rest of the municipality prior to annexation.

(g) On February 7, 1977, the City of Goldsboro had located in the area to be annexed major trunk water mains and sewer outfall lines to serve said area on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. The Petitioner, Charles E. Dail, is not receiving public water or sewer service at the present time since he does not desire either public water or sewer service. The City of Goldsboro can provide the Petitioner, Charles E. Dail, and other residents of the 59.25 acre tract with public water and sewer service in accordance with uniform policies in existence within the City of Goldsboro. The residents of the Seymour Johnson Air Force Base are receiving public water and sewer service at the present time.

(h) The City of Goldsboro has sufficient revenues or plans for financing the extension of all services in the area to be annexed. The City of Goldsboro has sufficient revenues to provide all services required under the annexation laws on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.

16. The area annexed is located on the eastern edge of Goldsboro and, on February 7, 1977, there were approximately 1,007 housing structures located on Seymour Johnson Air Force Base and within the 59.25 acre area. On February 7, 1977, an estimated 8,852 persons resided in the 3,216.25 acre tract.

(a) Within the said annexed area, 3,157 acres are classified as having a governmental purpose or use, that 8,827 persons resided in said area and over 1,000 housing structures are located on Seymour Johnson Air Force Base. In the 59.25 acre tract, there are seven (7) residential lots comprising 2.44 acres and 29 vacant lots comprising 54.11 acres.

(b) The area annexed was adjacent or contiguous to the City of Goldsboro at the time of annexation within the meaning of G.S. 160A-48 in that the aggregate external boundary of the area to be annexed is 66,343.5 feet of which 10,886 feet (or more than one-eighth) coincided with the City of Goldsboro's boundary prior to annexation. That 15.9 percent of the aggregate external boundary of the area to be annexed coincided with the boundary of the City of Goldsboro at the time of annexation. That no part of the area annexed was included within the boundary of another incorporated municipality.

(c) The area annexed was developed for urban purposes within the meaning of G.S. 160A-48 in that it had a resident population equal to 2.75 persons for each acre of land included within its boundaries. There were 8,852 persons residing on 3216.25 acres.

(d) The northeastern section of the City of Goldsboro and the surrounding area outside of the corporate limits of the City of Goldsboro (but adjacent to the City of Goldsboro and the area to be annexed) have the largest shopping area in eastern North Carolina and a heavily populated area which requires sound urban development and planning.

In re Annexation Ordinance

17. The Petitioner, Charles E. Dail, has not presented any evidence that tends to show that he has in any way suffered any material injury by reason of any failure of the City of Goldsboro to comply with procedure set forth in the statute or any failure to meet the requirements set forth in G.S. 160A-48 as they apply to his property.

18. The Petitioner, Hans A. Staps was not present at the trial and presented no evidence, and as a result failed to show that he has in any way suffered any material injury by reason of any failure of the City of Goldsboro to comply with the procedures set forth in the statute or any failure to meet the requirements set forth in G.S. 160A-48 as they apply to his property.

UPON THE FOREGOING FINDINGS OF FACT, the Court makes the following:

## CONCLUSIONS OF LAW

1. That the area designated by the City of Goldsboro and known as the Seymour Johnson Air Force Base area, containing 3216.25 acres meets all criteria authorizing annexation under Part III, Article 4A, Chapter 160A of the General Statutes of North Carolina.

2. That the Petitioner, Charles E. Dail, through counsel has stipulated and agreed in open court that the City of Goldsboro has followed the Statutory Procedures within the meaning of G.S. 160A-50(f)(1) of the General Statutes.

3. That property owned by the United States of America is subject to annexation under the provision of Part III, Chapter 4A, of Chapter 160A of the General Statutes of North Carolina.

4. That the City of Goldsboro has met the requirements of the provisions of G.S. 160A-47 and G.S. 160A-48.

5. That Part III, Article 4A, of Chapter 160A of the General Statutes of North Carolina, as it applies to the area annexed, does not violate Article 1, Section 1; Article 1, Section 6; Article 1, Section 19; Article 2, Section 1; Article 5, Section 2 of the Constitution of North Carolina, nor the 14th Amendment of the Constitution of the United States.

6. That the Petitioner, Charles E. Dail, as a resident of the 59.25 acre tract, and the Petitioner, Hans A. Staps, have failed to show by sufficient evidence that they have suffered material injury by reason of any failure of the City of Goldsboro to comply with the procedures set forth in the statutes or any failure to meet the requirements set forth in G.S. 160A-48 as they apply to their property.

Upon the foregoing findings of fact, and conclusions of law, it is ORDERED, ADJUDGED AND DECREED that the action of the Board of Aldermen of the City of Goldsboro in the adoption of the Annexation Ordinance No. 1977-4, be affirmed; and that said annexation is fully effective as to the area described in said Ordinance from and after February 7, 1977, the cost of this action shall be taxed against the Petitioners.

*Bernard A. Harrell for petitioner appellant.*

*Smith, Everett & Womble, by W. Harrell Everett, Jr., for respondent appellee.*

BRITT, Justice.

[1] Under G.S. 160A-50(f), the person challenging an annexation ordinance must show (1) that the statutory procedure was not followed, or (2) that the provisions of G.S. 160A-47 were not met, or (3) that the provisions of G.S. 160A-48 have not been met. The party challenging the annexation has the burden of showing error. In *In re Annexation Ordinance*, 284 N.C. 442, 452, 202 S.E. 2d 143 (1974), this court, speaking through Huskins, J., said:

> "As a general rule it is presumed that a public official in the performance of his official duties 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest. [Citation omitted.] The presumption of regularity of official acts is rebuttable by affirmative evidence of irregularity or failure to perform duty, but the burden of producing such evidence rests on him who asserts unlawful or irregular conduct. The presumption, however, prevails until it is overcome by . . . evidence to the contrary. . . . Every reasonable intendment will be made in support of the presumption. . . .' *Huntley v. Potter*, 255 N.C.

619, 122 S.E. 2d 681 (1961); *accord, Styers v. Phillips*, 277 N.C. 460, 178 S.E. 2d 583 (1971). Hence the burden is on the petitioner to overcome the presumption by competent and substantial evidence. 6 N.C. Index 2d, Public Officers, § 8 (1968)."

Petitioner concedes that respondent followed the statutory procedures "within the meaning of G.S. 160A-50(f)(1)". That being true, our inquiry is whether petitioner has met his burden of showing by competent and substantial evidence that respondent did not comply with the provisions of G.S. 160A-47 or G.S. 160A-48. We hold that petitioner has not met that burden.

[2] By his assignments of error, 1, 2, 3, and 4, petitioner argues that the trial court erred in finding as facts that respondent city could provide police protection, fire protection, garbage collection service and street maintenance for the annexed areas in the event the federal government ceased to provide said services to the air base, and that respondent had sufficient monies to do so. His primary argument on these assignments is that the findings of fact are not supported by the evidence.

Petitioner does not seriously argue that respondent cannot provide said services to the 59.25 acre tract in which his premises are located. In attacking respondent's ability to provide services to the air base, petitioner relies in large part on the testimony of certain of respondent's department heads which he presented as witnesses.

These include the chief of police who testified that if he were required to provide full police protection to the newly-annexed area, he could not do it "with my present budget and department"; the chief of the fire department who stated that if the air base were to disband its fire department, respondent city could not provide adequate fire protection for the area; and the city manager who stated that the current budget of respondent did not show any funds for providing police protection, fire protection and refuse collection for the newly-annexed area.

Off-setting testimony was provided by the city manager on re-direct examination when he testified that if the federal government ceased providing police protection for the air base, he thought respondent could provide that service from several

sources of revenue; and that the city could also provide fire pro-
tection to the air base although it would mean a diminished level
of services throughout the city. Further off-setting testimony was
provided by the city finance officer who stated that in his opinion
the city could provide all municipal services to the air base should
the federal government terminate those services; and that the
city was in relatively sound financial condition, having some fifty
sources of revenue which it could use for all city purposes.

The record further reveals that for the first year following
annexation the increased cost to the city would be only $2,053
while the increased revenues to the city—from property taxes,
Powell Bill funds, water revenue, public utility franchise taxes,
and wine and beer excise taxes—would be $230,624. It was also
shown that the city had previously extended major trunk water
mains and sewage lines to the boundaries of the air base proper-
ty.

While there is evidence to support some of petitioner's con-
tentions, there is evidence to support the court's findings of fact.
These findings are conclusive if supported by any competent
evidence, and judgment supported by such findings will be affirm-
ed even though there is evidence contra. 1 Strong's N.C. Index
3d, Appeal and Error § 57.2.

Assignments of error 1, 2, 3 and 4 are overruled.

By his fifth and sixth assignments of error, petitioner con-
tends the trial court erred in finding as facts (1) that on 7
February 1977 there existed a water distribution system in the
area to be annexed which provided fire protection "on substantial-
ly the same basis and in the same manner as that provided within
the rest of the municipality prior to annexation", and (2) that the
residents of the air base were receiving public water and sewer
services at the time of the trial. These assignments have no
merit.

There was plenary evidence that the federal government was
providing adequate fire protection, water and sewer services on
the air base with water provided partly by respondent and partly
by deep wells on the base, and with sewer facilities provided by
respondent and the federal government. There was also evidence
that respondent had a sound plan to provide fire protection to

homes and other structures on the 59.25 acre tract; also water for those on said tract who wanted it. "[T]here is no requirement that a municipality duplicate services, in an area to be annexed, which are already available in the area." *Huntley v. Potter,* 255 N.C. 619, 632, 122 S.E. 2d 681 (1961). Furthermore, it would appear from a reading of G.S. 160A-49(h) that a city annexing territory has one year—possibly 15 months—to implement its plan for extending services to an annexed area.

[3] By his seventh assignment of error, petitioner contends the trial court erred in finding that respondent had sufficient revenues or plans for financing the extension of municipal services to the area annexed; and that respondent had "sufficient revenues to provide all services required under the annexation laws on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation". This assignment has no merit.

While there was some evidence that would support this contention, there was other evidence contradicting it and the trial court was the trier of the facts. Clearly, the evidence showed that respondent was able to provide comparable services to the 59.25 acre area. We think the evidence was also clear that the federal government was rendering, and would continue to render, police and fire protection and water, sewer and street maintenance service on the air base that were comparable to that rendered by respondent in other parts of the city. This evidence, together with that of the city finance officer that respondent was financially able to render the services on the air base in the event the federal government should cease doing so, was sufficient to support the findings of fact.

[4] In his eighth assignment petitioner asserts error in the court's finding that the area annexed was developed for urban purposes within the meaning of G.S. 160A-48.

G.S. 160A-48(c)(1) reads in pertinent part as follows: "(c) Part or all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which  . . . (1) Has a total resident population equal to at least two persons for each acre of land included within its boundaries. . . ." G.S. 160A-54 provides: " . . . In determining whether the standards set forth in G.S. 160A-48 have been met on appeal

to the superior court under G.S. 160A-50, the reviewing court shall accept the estimates of the municipality: (1) As to population, if the estimate is based on the number of dwelling units in the area multiplied by the average family size in such area, or in the township or townships of which such area is a part, as determined by the last preceding decennial census . . . provided, that the court shall not accept such estimates if the petitioners demonstrate that such estimates are in error in the amount of ten percent (10%) or more." In construing this portion of the annexation statute this Court, speaking through Justice Huskins, has said that ". . . the tests to determine whether an area is developed for urban purposes must be *applied* to the annexation area as a whole." *In re Annexation Ordinance, supra* at 456.

In the present case the City of Goldsboro annexed 3216.25 acres. The parties stipulated prior to trial that "an estimated 8,827 persons resided in the 3,157 acre area known as the Seymour Johnson Air Force Base" and that "an estimated twenty-five persons resided" in the remaining 59.25 acres of the annexed area. At trial petitioner's evidence tended to show that 7930 persons lived on the base and twenty-five persons lived in the remainder of the annexed area. Both the figure stipulated to prior to trial and the figure actually shown by the evidence provide a sufficient estimate of the population of the entire 3216.25 acres to obtain the ratio of two persons per acre of annexed land which G.S. 160A-48 requires.

On appeal, however, petitioner contends that the military personnel stationed on the base should not have been counted in determining the population estimate. He argues that these persons are not subject to taxation by the annexing unit and are not *ipso facto* eligible to vote therein. He insists, therefore, that they are not *bona fide* "residents" of the annexed area. We disagree.

[5]    At the outset, we note the stipulation entered into between the parties prior to trial. Ordinarily, such stipulations constitute judicial admissions binding on the parties and dispense with the necessity of proving the stipulated fact. Such stipulations continue in force for the duration of the controversy and preclude the later assertion of a position inconsistent therewith. *Hargus v. Select Foods, Inc.*, 271 N.C. 369, 156 S.E. 2d 737 (1967); *Plumbing Co. v. Construction Co.*, 268 N.C. 23, 149 S.E. 2d 625 (1966). It is

also true, however, that intent of the parties and their circumstances at the time the stipulation was signed must be examined to ensure that the language of the stipulation will not be construed to effect an admission of a fact which was intended to be controverted. *Rickert v. Rickert*, 282 N.C. 373, 193 S.E. 2d 79 (1972). Our examination of the petition in this case reveals that petitioner asserted that the base personnel were not within the meaning of "resident" under G.S. 160A-48. It would be anomalous to find that he conceded this point at trial only to reassert it on appeal when the language of the stipulation is susceptible of being construed as conceding the number of persons on the base and precluding proof of that issue only. We adopt this latter construction of the stipulation and address ourselves to the argument raised by the petitioner.

Acceptance of petitioner's contention with regard to the military personnel on Seymour Johnson Air Force Base would compel us to require that the annexing unit make a finding that a person is *actually* domiciled within the proposed area of annexation before counting that person for the purpose of making the population estimate required by the statute. This would impose an unnecesary administrative burden not contemplated by the statute, and we refuse to impose such a requirement.

> "Precisely speaking, *residence* and *domicile* are not convertible terms. A person may have his residence in one place and his domicile in another. Residence simply indicates a person's actual place of abode, whether permanent or temporary. Domicile denotes one's permanent, established home as distinguished from a temporary, although actual, place of residence. *Hall v. Board of Education*, 280 N.C. 600, 605, 187 S.E. 2d 52 (1972)."

We hold that a person is properly counted as a member of the "total resident population" under G.S. 160A-48 if such person would have been counted as an inhabitant of the proposed area of annexation under rules governing the last preceding decennial census. This method of enumerating population is consistent with the manner in which average family size is determined under G.S. 160A-54. It is also employed in apportioning congressional districts. G.S. 163-201. *See also: Drum v. Seawell*, 249 F. Supp. 877 (M.D.N.C., 1965), *affirmed*, 383 U.S. 831, 16 L.Ed. 2d 298, 86

S.Ct. 1237 (1966), (presence of large numbers of military personnel does not justify underrepresentation of an area).

The military personnel on Seymour Johnson Air Force Base were properly counted in determining the population estimate required by G.S. 160A-48. In accordance with census practice dating back to 1790 persons enumerated in the 1970 census who lived on military bases as members of the armed forces were counted as residents of the states, counties, and minor civil divisions in which their installations were located. U. S. Dept. of Commerce, Bureau of the Census, 1970 Census of Population, Number of Inhabitants, United States Summary, p. IV (1971). We hold that the court did not err in finding that the annexed area was developed for urban purposes within the meaning of G.S. 160A-48(c).

While petitioner recognizes the rule of presumptive regularity of official acts as well as the burden of proof imposed on him thereby, he contends (1) that the annexation is void as being beyond the delegation of legislative authority granted by Part III, Article 4A of Chapter 160A, and (2) that the report or Plan of Annexation in this case is insufficient to raise the *prima facie* rule of regularity. With these two contentions we cannot agree.

[6] Petitioner appears to contend that for the annexation to be legal, respondent, at the time of the trial (October 17, 1977), had to have funds *budgeted* to provide municipal services to the air base in the event the federal government ceased providing those services. We find nothing in applicable statutes to support this contention.

G.S. 160A-47(3) requires the annexing city to file a statement showing *how* it will provide and finance municipal services to the annexed area. As we have already said, there is no requirement that available services be duplicated. *Huntley v. Potter, supra.* This Plan of Annexation is not based upon a doubtful contingency but upon sound estimates of anticipated expenditures and revenue. *Cf.: In Re Annexation Ordinance,* 255 N.C. 633, 122 S.E. 2d 690 (1961) (city relied on developers and landowners to provide service rather than formulating its own plan). This is sufficient to raise the presumption of regularity.

The action taken by the City of Goldsboro is also within the power delegated to it by the legislature. Municipalities have no

inherent powers; they have only such powers as are delegated to them by legislative enactment. *Koontz v. Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897, *rehearing den.*, 281 N.C. 516, 189 S.E. 2d 35 (1972); *Moody v. Transylvania County*, 271 N.C. 384, 156 S.E. 2d 716 (1967). "A municipal corporation or its corporate authorities have no power to extend its boundaries otherwise than provided by legislative enactment or constitutional provision. Such power may be validly delegated to municipal corporations by the legislature, and when so conferred must be exercised in strict accord with the statute conferring it." *Huntley, supra* at 627.

G.S. 160A, Article 4A, Part III, establishes annexation powers for municipalities larger than 5000 persons. *Prima facie* complete and substantial compliance therewith is a condition precedent to annexation of territory by a municipality. *In Re Annexation Ordinance*, 278 N.C. 641, 180 S.E. 2d 851 (1971); *In Re Annexation Ordinance*, 255 N.C. 633, 122 S.E. 2d 690 (1961). The record in this case reveals such compliance. The parties stipulate procedural compliance. The character of the annexed area is such as is prescribed by G.S. 160A-48, and Goldsboro's Plan of Annexation complies with G.S. 160A-47.

Because we find that Goldsboro has complied with G.S. 160A-47 and G.S. 160A-48, we need not examine petitioner's ninth assignment of error. By it he contends the court erred in finding as fact and concluding as a matter of law that he had shown no material injury to himself resulting from non-compliance with the annexation statute. Inquiry into the injury suffered by the petitioner is necessary only where it is shown that the annexation statute has not been complied with. *In Re Annexation Ordinance*, 278 N.C. 641, 180 S.E. 2d 851 (1971).

In his tenth and eleventh assignments of error petitioner contends that the court erred in concluding as a matter of law that Seymour Johnson Air Force Base meets all the requirements of G.S. 160A-47 and G.S. 160A-48, in concluding as a matter of law that the base owned by the United States was subject to annexation under the statute, and in entering judgment in accord with these conclusions.

We have already examined G.S. 160A-47 and G.S. 160A-48 and have determined for reasons previously stated that Seymour Johnson Air Force Base is property which complies with the re-

quirements of those statutes. There is no need to repeat that discussion.

[7]  Petitioner argues finally that allowing Goldsboro to annex Seymour Johnson Air Force Base violates the express purposes of the annexation statute and allows the imposition of an unconstitutionally unequal tax on citizens of the same class.

Annexation by a city or town is viewed as a political matter to be regulated solely by the state legislature. 2 McQuillin, Municipal Corporations § 7.10, p. 309. While this court has not considered heretofore the question of municipal annexation of federal property, the courts of our sister states which have done so have been nearly unanimous in their approval of such action when it is taken in accordance with the states' statutes. *See, e.g.: Howard v. Commissioners of Louisville*, 344 U.S. 624, 97 L.Ed. 617, 73 S.Ct. 465 (1953); *Flynn v. Stevenson*, 4 Ill. App. 3d 458, 281 N.E. 2d 438 (1972); *Kansas City v. Querry*, 511 S.W. 2d 790 (Mo., 1974); *Wichita Falls v. Bowen*, 143 Tx. 45, 182 S.W. 2d 695 (1944); *Norfolk County v. City of Portsmouth*, 186 Va. 1032, 45 S.E. 2d 136 (1947), *contra, United States v. Bellevue*, 334 F. Supp. 881 (D. Neb., 1971), *affirmed*, 474 F. 2d 473, *cert. denied*, 414 U.S. 827, 38 L.Ed. 2d 60, 94 S.Ct. 46 (1973). In *Bellevue*, the only decision we have found overturning an annexation of federal property, the court held that federal property could be annexed under the statute but that the statute did not allow annexation of property solely for purpose of obtaining greater revenue, the avowed purpose of the city in that case.

In the present case the proposed area of annexation possesses every characteristic which the legislature deemed essential for "sound urban development." The City of Goldsboro has meticulously complied with the annexation statutes. We cannot substitute our judgment for that of the legislature on this question and are compelled to hold that Seymour Johnson Air Force Base is subject to annexation under the existing statutes.

Furthermore, we can find no constitutional impediment to this annexation. Absent interference with asserted federal jurisdiction, the "fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries." *Howard v. Commissioners of Louisville, supra.* The power to annex federal property is general-

ly unrestricted if it is annexed in accord with the state's statutes; such an exercise of the annexation power cannot be approved, however, where it is for the *sole* purpose of generating revenue. *See:* 11 Military Law Review 99 (1961). Federal consent to the annexation is unnecesasry. *Agua Caliente Band, Etc. v. Palm Springs,* 347 F. Supp. 42 (Cal., 1972). This annexation has not been objected to by the federal government and does not interfere with federal jurisdiction.

[8]   Nor will this annexation create unconstitutional tax classes. Taxes must be uniformly imposed throughout a taxing jurisdiction. *Dyer v. City of Leaksville,* 275 N.C. 41, 165 S.E. 2d 201 (1969); *Leonard v. Maxwell,* 216 N.C. 89, 3 S.E. 2d 316, appeal dismissed, 308 U.S. 516, 84 L.Ed. 439, 60 S.Ct. 175 (1939). However, the legislature is given the widest latitude in making distinctions which are bases for tax classifications; such classifications will not be disturbed unless they are capricious, arbitrary and unjust. *Rigby v. Clayton,* 274 N.C. 465, 164 S.E. 2d 7 (1968). The petitioner in this case will be taxed in the same manner as every other citizen of Goldsboro. He cannot complain because Congress has exempted military personnel from local taxation. Soldiers and Sailors Civil Relief Act, 50 U.S.C.A. § 574.

For the reasons stated, the judgment appealed from is

Affirmed.