H.E. MOODY v. TOWN OF CARRBORO

No. 28

(Filed 4 November 1980)

1. **Municipal Corporations § 2.4– attack on annexation – denial of motion to amend pleading**

    The trial court did not err in the denial of plaintiff's motion to amend his pleading in an action attacking an annexation ordinance to include a further section alleging failure on the part of defendant town to meet the prerequisites to annexation set forth in G.S. 160A-47(3) by not indicating in the annexation report the plans of the town to extend bus service into the annexed area where the motion to amend was not made until the day of hearing, since the allowance of such amendment on the day of the hearing would constitute unnecessary delay in an expedited hearing procedure.

2. **Jury § 1; Municipal Corporations § 2– annexation procedure – absence of jury trial – constitutionality**

    The procedure for annexation by cities of 5,000 or more, G.S. 160A-45 to -56, does not violate Art. I, § 25 of the N.C. Constitution because it does not provide for trial by jury on issues of fact.

3. **Municipal Corporations § 2– annexation procedure – payment of ad valorem taxes – municipal services – due process**

    The procedure for annexation by cities of 5,000 or more does not authorize a taking of private property without just compensation in violation of the due process clause of the Fifth Amendment of the U.S. Constitution or the law of the land provision of Art. I, § 19 of the N.C. Constitution on the alleged ground that petitioner will pay a substantial sum in ad valorem taxes to the annexing town without receiving any substantial benefits or major services he does not already receive, since petitioner may petition for a writ of mandamus pursuant to G.S. 160A-49(h) if he discovers he is not receiving services other residents are receiving within 12 to 15 months from the effective date of the annexation, and the annexation procedure thus provides adequate due process safeguards to assure that citizens in the annexed area get municipal services on a nondiscriminatory basis.

4. **Municipal Corporations § 2.3– annexation report – policy statement**

    A statement in an annexation plan report that the annexation is designed to promote sound urban development and assure adequate provision of government services is a sufficient statement of the policy objectives to be met by the annexation to comply with G.S. 160A-45.

5. **Municipal Corporations § 2.3– annexation report – sufficiency of maps**

    Maps prepared by a town as part of its revised annexation plan report substantially complied with G.S. 160A-47(1), although the eastern boundary and approximately one-fifth of the town area were omitted and the map showing the general land use pattern contained several blank areas representing vacant lots which do not appear as a category on the legend of the

maps, where the entire area contiguous to the area to be annexed and that area itself were included on the map.

**6. Municipal Corporations § 2.6– annexation report – extension of services to annexed area·**

A revised annexation plan report was sufficiently specific with respect to providing police and garbage collection services, was sufficient with respect to extension of street maintenance services where it detailed what services were provided in the annexing town and stated that all such services would be provided in the annexed area, and was not deficient in failing to provide for the extension of water and sewer lines where this was not a service provided by the town to anyone but was a duty vested with an independent water authority. G.S. 160A-47(3)a.

**7. Municipal Corporations § 2.5– effective date of annexation**

Where petitioner appealed an annexation ordinance to the superior court within the time limits of G.S. 160A-50(a) but not before the ordinance's effective date of 31 December 1979, the superior court on 18 February 1980 remanded the annexation plan report to the town board for a more specific statement of the services to be provided and the sources of revenues to finance such services, and the infirmities in the report were cured by a revised plan adopted on 26 February 1980, this date became the effective date of the annexation ordinance subject to further appeal to the superior court. Where such appeal was taken and the superior court entered an order on 4 March 1980 approving the 26 February 1980 revised annexation plan report and affirming the annexation, the effective date of the annexation thus became 4 March 1980 subject to further appeal to the N.C. Supreme Court. When petitioner appealed from that judgment to the Supreme Court, the effective date of the ordinance was again postponed by the language of G.S. 160A-50(i) until the date the final judgment of the Supreme Court was certified to the clerk of superior court.

Justice BROCK took no part in the consideration or decision of this case.

APPEAL by plaintiff petitioner pursuant to G.S. 160A-50(h) from judgment of *Brewer, J.,* entered 4 March 1980 in ORANGE Superior Court.

Petitioner seeks a declaratory judgment and review of an annexation ordinance of the Town of Carrboro.

At its 23 October 1979 meeting, the Carrboro Board of Aldermen passed resolutions expressing intent to annex certain property to the north and west of existing town limits and to hold a public hearing on the question on 3 December 1979; notice of said public hearing was published in the Chapel Hill newspaper on 11, 18 and 25 November and 2 December 1979. The Town also prepared an Annexation Plan Report dated 23 October 1979.

Petitioner owns property adjoining a state-maintained secondary road within the proposed area to be annexed. At the time of the 3 December hearing, petitioner was receiving adequate fire protection from the Town of Carrboro under contract with Orange County; the Orange County Sheriff's Department had law enforcement jurisdiction over petitioner's property; the property was not hooked up to the water and sewer system operated by the Orange Water and Sewer Authority (OWASA); and petitioner's property was served by a private garbage collection service.

At the 3 December hearing, several people testified, including the Carrboro planning director, the chairman of the Planning Board, a spokesman for the Economic Development Commission and residents of the proposed annexation area. Residents of the proposed annexation area spoke unanimously against annexation.

Sonna Loewenthal, the Town's planning director, testified that upon annexation, area residents would immediately have all the privileges and responsibilities of Town citizens. She then read from and commented upon the Annexation Plan Report, copies of which she said were available to the public. The planning director stated the Town intended to provide services to the annexed area in "substantially the same manner as provided to the rest of the town." She further stated that the annexation area already had fire protection through the South Orange Fire District and that all streets except those in the Barrington Hills subdivision were part of the state highway system maintained by the Department of Transportation. Loewenthal anticipated no capital expenditures as a result of the annexation.

Robert McDuffey, chairman of the Planning Board, testified against the proposed annexation. He stated the Planning Board had passed a unanimous resolution saying that the development of an initial annexation proposal should not have been the responsibility of the Town staff alone and that there should have been more communication before the public hearing between the Town government and the Planning Board. He stated that the Planning Board felt only the Barrington Hills subdivision and an apartment complex were suitable for

annexation since the remaining area was rural and already within the Town's planning district.

Miles Crenshaw, spokesman for the Economic Development Commission, stated that it would be advantageous to Carrboro not to annex rural areas likely to be industrialized in the near future until they were developed.

On 19 December, the Carrboro Board of Aldermen adopted an annexation ordinance effective 31 December 1979 incorporating certain portions, but not all, of the area proposed for annexation.

Petitioner filed this action on 18 January 1980 alleging unconstitutionality of the annexation statutes and the Town of Carrboro's failure to meet requirements of annexation set out in those statutes. At the 18 February 1980 hearing on the matter, petitioner moved to amend his pleading to include an allegation regarding the failure of the Town to include in its Annexation Plan Report a statement on its intent to provide bus service in the annexed area. The court denied this motion. The constitutional claims were dismissed. The annexation ordinance was remanded to the Town Board of Aldermen for purposes of bringing the Annexation Plan Report and the annexation ordinance within the statutory requirements. The trial court stated:

> [T]here is insufficient specificity to enable the Court or a reviewing body to make a reasonable and intelligent appraisal of the Town of Carrboro's capacity and intent to provide services to the newly annexed area and based on such finding the Court concludes that there is a fatal lack of specificity in the Section III entitled, *Provision of Services.*

On 26 February, the Carrboro Board of Aldermen adopted a resolution which amended the annexation report. The amended report was served on petitioner on 4 March, the same day a hearing was held in superior court on the annexation.

The superior court found the Revised Annexation Plan Report demonstrated prima facie compliance with G.S. 160A, Art. 4A, Part 3. The ordinance adopted 19 December 1979 was declared valid and enforceable. The superior court affirmed the

action of the Board of Aldermen in adopting the ordinance. Petitioner appealed to this Court.

*Coleman, Bernholz, Dickerson, Bernholz, Gledhill & Hargrave, by Alonzo Brown Coleman, attorneys for plaintiff appellant*

*Michael B. Brough, attorney for defendant appellee*

HUSKINS, Justice:

[1] Petitioner assigns error in the denial of the motion to amend his pleading to include a further section alleging failure on the part of the Town to meet the prerequisites to annexation set forth in G.S. 160A-47(3) by not indicating in the annexation report the plans of the Town to extend bus service into the annexed area which petitioner contends is a major service provided by the Town. This argument is without merit.

The motion to amend was addressed to the sound discretion of the court. The denial of such motion is reviewable only for manifest abuse of discretion. *Vending Co. v. Turner*, 267 N.C. 576, 148 S.E. 2d 531 (1966); *Crump v. Eckerd's Inc.*, 241 N.C. 489, 85 S.E. 2d 607 (1955); *see also* G.S. 1A-1, Rule 15. The record indicates petitioner first moved to amend orally in open court at the 18 February 1980 hearing. A written version of the amendment was filed on 6 March 1980. The trial court denied the motion at the 18 February hearing. This denial was not an abuse of discretion. The judicial review afforded in annexation proceedings is limited in scope. The review is afforded pursuant to G.S. 160A-50 and serves as a safeguard against unreasonable and arbitrary action by the annexing municipality. *See* G.S. 160A-50(f). The clear intent of the legislature is that this review be expedited. The petition for review must be filed within thirty days following passage of the annexation ordinance. G.S. 160A-50(a). "Such petition *shall explicitly state* what exceptions are taken to the action of the governing board and what relief the petitioner seeks." G.S. 160A-50(b) (emphasis added). The petition must be served on the town within five days of its filing and the town then has fifteen days or such additional time as the court may allow to provide the court with a transcript of the minutes relating to the annexation and a copy of the annexation report. G.S. 160A-50(b)(c). The court must then set a hearing date, preferably within thirty days following the last day for

receiving petitions "to the end that review shall be expeditious and without unnecessary delays." G.S. 160A-50(f). The statute requires that petitioner "explicitly state what exceptions are taken," and he did not do this with respect to bus service. Nor did he attempt to explain his failure to raise the question of bus service in the petition he initially filed. To allow the amendment on the day of the hearing would ordinarily cause needless delay. The record indicates that bus service within the Town of Carrboro is provided by the Town of Chapel Hill according to contractual arrangement between the two towns. The routing of the bus service was the responsibility of the Town of Chapel Hill, and the Carrboro town manager termed routing "a political question." If bus service is a proper issue for the reviewing court to consider as one of the prerequisites to annexation, some evidence from the Town of Chapel Hill seemingly would be required. To allow this attack through amendment on the day of the hearing would constitute unnecessary delay in an expedited hearing procedure. The superior court did not abuse its discretion in denying the motion to amend.

We do not reach the question whether bus service is indeed a "major municipal service performed in the municipality at the time of annexation" within the contemplation of G.S. 160A-47(3) which would require that the plan of annexation state how such service would be extended into the annexed area. Nor do we reach the question whether a "major municipal service" which is not specifically listed in G.S. 160A-47(3) a, b, c, such as bus service, should be discussed in the annexation report.

[2] Review of an annexation ordinance is provided in the superior court of the county in which the municipality is located and "shall be conducted by the court without a jury." G.S. 160A-50(f). Petitioner argues that the entire procedure for annexation by cities of 5,000 or more, G.S. 160A-45 to -56, is unconstitutional in that it does not provide for trial by jury on issues of fact as required by N.C. Const. art. I, § 25 for "controversies at law respecting property." This argument has been raised before and squarely rejected. *In re Annexation Ordinance*, 284 N.C. 442, 202 S.E. 2d 143 (1974); *In re Annexation Ordinance*, 253 N.C. 637, 117 S.E. 2d 795 (1961). In the 1961 case, this Court said:

> The procedure and requirements contained in the [annexation legislation] being solely a legislative matter, the right of trial by jury is not guaranteed, and the fact that the General Assembly did not see fit to provide for trial by jury in cases arising under the Act, does not render the Act unconstitutional.

> The right to a trial by jury, guaranteed under our Constitution, applies only to cases in which the prerogative existed at common law, or was procured by statute at the time the Constitution was adopted. The right to trial by jury is not guaranteed in those cases where the right and remedy have been created by statute since the adoption of the Constitution.

253 N.C. at 649, 117 S.E. 2d at 804. Our earlier holdings on this issue are sound and will not be disturbed.

[3] Petitioner further attacks the constitutionality of the annexation procedure on the ground that it authorizes a taking of private property without just compensation in violation of the due process clause of the Fifth Amendment of the United States Constitution and the law of the land provision found in the North Carolina Constitution, art. I, § 19. Petitioner's basic argument is that he will pay a substantial sum in ad valorem taxes to the Town without receiving any substantial benefits or major services he does not already receive. A similar constitutional claim was rejected in *In re Annexation Ordinance*, 253 N.C. 637, 117 S.E. 2d 795 (1965), where the Court stated:

> Certainly it would seem that [petitioners] do not desire to have their respective properties subject to the levy of city taxes. Even so, where additional territory is annexed in accordance with the law, the fact that the property of the residents in such area will thereby become subject to city taxes levied in the future, does not constitute a violation of the due process clause of the State and Federal Constitutions.

253 N.C. at 651-52, 117 S.E. 2d at 805. Petitioner has adequate due process safeguards within the existing annexation law to assure that he gets Town services on a nondiscriminatory basis. However, "there is no requirement that a municipality duplicate services, in an area to be annexed, which are already

available in the area." *Huntley v. Potter*, 255 N.C. 619, 632, 122 S.E. 2d 681, 689 (1961); *see also In re Annexation Ordinance*, 296 N.C. 1, 249 S.E. 2d 698 (1978). Thus the Town need not lay a sewer or water line where it does not do so for anyone else and where service is provided by an independent authority. The Town has submitted a plan pursuant to G.S. 160A-47 demonstrating it will provide its services equally. But, if petitioner discovers he is not receiving services other residents are receiving, whatever those services may be, within twelve to fifteen months from the effective date of the annexation, he may petition for a writ of mandamus pursuant to G.S. 160A-49(h). The annexation procedure adequately provides protection to the annexed area to assure that its citizens get adequate nondiscriminatory municipal services.

Petitioner next argues that the superior court erred in finding as fact that the Revised Annexation Plan Report of the Town complied with the annexation statutes in that it failed to comply with the declarations of State policy found in G.S. 160A-45 and failed to comply with several of the prerequisites to a valid annexation found in G.S. 160A-47. There is no merit in any of these contentions.

[4] Petitioner contends the Revised Annexation Plan Report does not state any policy objectives to be met by the annexation of his property. The report states: "The North Carolina General Assembly recognizes the extension of municipal boundaries through annexation as a desirable mechanism to promote sound urban development and assure adequate provision of government services" and then quotes the body of G.S. 160A-45 which provides:

> (1) That sound urban development is essential to the continued economic development of North Carolina;
>
> (2) That municipalities are created to provide the governmental services essential for sound urban development and for the protection of health, safety and welfare in areas being intensively used for residential, commercial, industrial, institutional and governmental purposes or in areas undergoing such development;

    (3) That municipal boundaries should be extended in accordance with legislative standards applicable throughout the State, to include such areas and to provide the high quality of governmental services needed therein for the public health, safety and welfare;

    (4) That new urban development in and around municipalities having a population of 5,000 or more persons is more scattered than in and around smaller municipalities, and that such larger municipalities have greater difficulty in expanding municipal utility systems and other service facilities to serve such scattered development, so that the legislative standards governing annexation by larger municipalities must take these facts into account if the objectives set forth in this section are to be attained;

    (5) That areas annexed to municipalities in accordance with such uniform legislative standards should receive the services provided by the annexing municipality as soon as possible following annexation.

G.S. 160A-45. Petitioner argues this is insufficient compliance with State policy outlined in G.S. 160A-45 in view of his position that (1) the Town has neither the ability nor the intention to provide the promised services, (2) petitioner neither needs nor wants the services and (3) petitioner's land is not ripe for annexation in the opinion of a majority of the Carrboro Planning Board.

    The grounds asserted for invalidity of the annexation are not properly raised under G.S. 160A-45. Rather, they are merely arguments addressed to the mechanics of annexation dealt with in G.S. 160A-46 to -49. For example, the question whether the area is ripe for annexation should be addressed under the statutory criteria set up in G.S. 160A-48. *See, e.g., Food Town Stores v. Salisbury*, 300 N.C. 21, 265 S.E. 2d 123 (1980). Petitioner has made no such argument. The Town states that the annexation is designed to promote sound urban development and assure adequate provision of government services. That is a

sufficient compliance with the general statement of legislative intent found in G.S. 160A-45. If petitioner seeks to invalidate the annexation, he must show noncompliance with the requirements for annexation found in G.S. 160A-46 to -49. Petitioner has made some arguments to that effect which we discuss next.

The annexation plan submitted by a municipality must show prima facie complete and substantial compliance with the annexation statutes as a condition precedent to the right to annex. *In re Annexation Ordinance*, 296 N.C. 1, 249 S.E. 2d 698 (1978); *Huntley v. Potter, supra.* "[S]light irregularities will not invalidate annexation proceedings if there has been substantial compliance with all essential provisions of the law." *In re Annexation Ordinance*, 278 N.C. 641, 648, 180 S.E. 2d 851, 856 (1971).

Petitioner has attacked the adequacy of the annexation report under standards provided in G.S. 160A-47. The superior court at the 18 February hearing properly remanded the original Annexation Plan Report to the Town Board for amendment of the plans for providing services to the end that the provisions of G.S. 160A-47 be satisfied. *See* G.S. 160A-50(g)(3). The amended report was approved by the superior court at the 4 March hearing. It is that amended report which petitioner contends is flawed.

[5] Petitioner contends maps prepared by the Town as part of the Revised Annexation Plan Report do not comply with the requirements of G.S. 160A-47(1), which provides that the report shall include:

> A map or maps of the municipality and adjacent territory to show the following information:
>
> a. The present and proposed boundaries of the municipality.
>
> b. The present major trunk water mains and sewer interceptors and outfalls, and the proposed extensions of such mains and outfalls as required in subdivision (3) of this section.
>
> c. The general land use pattern in the area to be annexed.

He contends the maps were inadequate because they failed to include the entire boundary of the Town and contained blank areas.

The eastern boundary and approximately one-fifth of the Town area was omitted. The entire area to the north and west of the Town contiguous to the area to be annexed and that area itself was included on the maps. The map showing the general land use pattern contains several blank areas. The blank areas apparently represent vacant lots which do not appear as a category on the legend of the maps. The maps are in substantial compliance with G.S. 160A-47(1).

[6] Petitioner complains that the Revised Annexation Plan Report is not sufficiently specific with respect to providing police and garbage collection services as required by G.S. 160A-47(3)a. The plan statements on these services are quite adequate. Similar statements have been approved. *See In re Annexation Ordinance,* 255 N.C. 633, 122 S.E. 2d 690 (1961).

Petitioner also contends the plan is insufficient with respect to extension of street maintenance service as required by G.S. 160A-47(3)a. The plan details what services are provided in the Town and states that all such services will be provided in the annexed area. Providing a nondiscriminating level of services within the statutory time is all that is required.

Petitioner's final attack on the Revised Annexation Plan Report deals with the failure of the Town to provide for extension of water and sewer lines. As heretofore pointed out, this is not a service provided by the Town to anyone. It is a duty vested with OWASA, an independent water authority. *See* G.S. 162A-1, *et seq.*

In summation, the Revised Annexation Plan Report is in substantial compliance with statutory requirements. The annexation ordinance cannot be voided on any ground raised in these arguments concerning the report on the plan to extend services to the annexed area.

[7] The final question we must address on this appeal is the effective date of the annexation ordinance. The ordinance was adopted on 19 December 1979 to become effective 31 December 1979. This proceeding for review of the annexation was instituted on 18 January 1980 within thirty days from the passage of

the ordinance as required by G.S. 160A-50(a). At the 18 February hearing, the superior court remanded the Annexation Plan Report to the Town Board of Aldermen for a more specific statement of the services to be provided and the sources of revenues to finance such services. A revised plan was adopted by the Board of Aldermen on 26 February 1980, and this report was approved by the superior court at the 4 March 1980 hearing. The judgment and order provided that the annexation ordinance adopted 19 December 1980 was effective and enforceable. The judgment and order did not specify the effective date of the ordinance. The facts of this case present a conflict between G.S. 160A-50(a) and (i). The provisions in question read as follows:

> Within 30 days following the *passage* of an annexation ordinance under authority of this Part, any person owning property in the annexed territory who shall believe that he will suffer material injury by reason of the failure of the municipal governing board to comply with the procedure set forth in this Part or to meet the requirements set forth in G.S. 160A-48 as they apply to his property may file a petition in the superior court of the county in which the municipality is located seeking review of the action of the governing board.

G.S. 160A-50(a) (emphasis added).

> If part or all of the area annexed under the terms of an annexation ordinance is the subject of an appeal to the superior or Supreme Court *on the effective date* of the ordinance, then the ordinance shall be deemed amended to make the effective date with respect to such area the date of the final judgment of the superior or Supreme Court, whichever is appropriate, or the date the municipal governing board completes action to make the ordinance conform to the court's instructions in the event of remand.

G.S. 160A-50(i) (emphasis added). Petitioner appealed to the superior court within the time limits of G.S. 160A-50(a) but not before the effective date of the ordinance.

Substantial compliance with the annexation statute is a condition precedent to effective annexation. *In re Annexation*

*Ordinance,* 296 N.C. 1, 249 S.E. 2d 698 (1978); *In re Annexation Ordinance,* 255 N.C. 633, 122 S.E. 2d 690 (1961). At the 18 February hearing, the superior court found the procedure not to be in substantial compliance due to failure to be specific in the Annexation Plan Report with respect to the services provided and their financing as required in G.S. 160A-47(3) and remanded the Annexation Plan Report for amendment by the Town Board pursuant to G.S. 160A-50(g)(3). Thus the ordinance could not be effective 31 December 1979 due to the infirmities. Since the infirmities were cured by the revised plan adopted on 26 February 1980, this date became the effective date of the annexation ordinance subject to further appeal to the superior court. Such appeal was taken. The superior court entered an order on 4 March 1980 approving the 26 February 1980 Revised Annexation Plan Report and affirming the annexation. The effective date of the annexation thus became 4 March 1980 subject to further appeal to the Supreme Court. Since plaintiff petitioner appealed from that judgment to the Supreme Court, the effective date of the ordinance was again postponed by the language of G.S. 160A-50(i) until the date of the final judgment of the Supreme Court.

The foregoing interpretation of the statutes correctly resolves the conflict between G.S. 160A-50(a) and (i). It was not the legislative intent to authorize the municipality to shorten the thirty-day period allowed aggrieved property owners within which to file a petition in the superior court for review of the annexation proceeding. To hold otherwise would produce an absurd and unjust result. For example, in this case, plaintiff petitioner would have had only eleven days during the Christmas holidays in which to seek review of the proceeding.

We hold that the effective date of the annexation order here in question will be the date on which the final judgment of this Court is certified to the Clerk of the Superior Court of Orange County.

For the reasons stated, the judgment of the superior court upholding the annexation is

Affirmed.

Justice BROCK took no part in the consideration or decision of this case.