CHAPEL HILL COUNTRY CLUB, INC., PETITIONER v. TOWN OF CHAPEL HILL, RESPONDENT

ERNESTINE PENDERGRAPH; P. H. CRAIG; VERNON L. PARRISH; EMMY PARRISH; CHARLES M. STANCELL; RODERICK L. ROBERSON; DONNA ROBERSON; ESTHER R. TRIPP; HERMAN B. LLOYD; THELMA LLOYD; LILLIAN G. LLOYD; GEORGE K. THOMPSON; ROY A. OLIVE; MARY OLIVE; WILLIAM BARNES; HOWARD BUCKNER; CATHERINE R. BUCKNER; BRUCE H. CURRAN; NANCY L. CURRAN; MARTHA EDWARDS; RONALD C. CROUCH; PHILLIP M. SPARROW; AND ROGER SPARROW, PETITIONERS v. TOWN OF CHAPEL HILL, RESPONDENT

D. ST. PIERRE DU BOSE AND WIFE, VALINDA H. DU BOSE; D. ST. PIERRE DU BOSE, JR. AND WIFE, ANNA S. DU BOSE; J. McNEELY DU BOSE AND WIFE, LYNNE K. DU BOSE; JOHN T. BOHLAYER AND WIFE, FRANCES FAISON DU BOSE BOHLAYER; AND LILLARD H. MOUNT, TRUSTEE U/A DATED MAY 15, 1987, FOR THE BENEFIT OF DAVID ST. PIERRE DU BOSE, JR., JOHN McNEELY DU BOSE, AND FRANCES FAISON DU BOSE BOHLAYER, PETITIONERS v. TOWN OF CHAPEL HILL, RESPONDENT

No. 8915SC83

(Filed 6 February 1990)

1. **Municipal Corporations § 2.2 (NCI3d)— annexation—country club golf course—institutional use**

Property owned by a private country club, much of which consisted of its golf course, could properly be classified as in institutional use for annexation purposes. N.C.G.S. § 160A-48(c)(3).

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 61, 65-67.**

2. **Municipal Corporations § 2.2 (NCI3d)— annexation—institutional use—different use on prior plans—no estoppel**

A town was not estopped from classifying private country club property as being put to institutional use for annexation purposes because the property was labeled "recreational" and "conservation/open space" in prior land use plans.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 61, 65-67.**

3. **Municipal Corporations § 2.2 (NCI3d)— annexation—nonurban areas—necessary land connection not required**

A municipality could annex nonurban property if it met the criteria set forth in N.C.G.S. § 160A-48(d)(1) or (d)(2), and the municipality was not required also to show that the nonurban area constitutes a necessary land connection between the municipality and an area developed for urban purposes or between two or more areas developed for urban purposes.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 61, 65-67.**

4. **Municipal Corporations § 2.2 (NCI3d)— annexation—property developed for urban purposes—different tests for subareas**

A municipality may divide an annexation area into subareas and qualify each of these subareas as property "developed for urban purposes" pursuant to separate subdivisions of N.C.G.S. § 160A-48(c).

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 61, 65-67.**

5. **Municipal Corporations § 2.6 (NCI3d)— annexation—police and fire protection—response time**

The evidence supported the trial court's finding that a town's plan to provide police and fire protection to an annexed area met the requirements of N.C.G.S. § 160A-47 although the town failed to promise additional personnel and equipment and there was expert testimony that the average response time to a fire alarm in the annexed area would be greater than in the municipality as a whole and that the average response time for police emergencies would be longer because of the increase in the town's area.

CHAPEL HILL COUNTRY CLUB v. TOWN OF CHAPEL HILL

[97 N.C. App. 171 (1990)]

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 61, 65-67.

6. **Municipal Corporations § 2.6 (NCI3d) — annexation — services by water and sewer authority**

A town's plan for the extension of water and sewer services to an annexed area by a water and sewer authority rather than by the town met the requirements of N.C.G.S. § 160A-47.

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 61, 65-67.

7. **Municipal Corporations § 2.1 (NCI3d) — annexation — amendment of annexation report after public hearing — new hearing not required**

A town council's amendment of the annexation report after a public hearing did not require a new hearing before the annexation ordinance was adopted where the amendment did not bring any new land within the scope of the ordinance, and the changes did not involve qualification of the land for annexation under additional subsections of N.C.G.S. § 160A-48(c) or (d) not listed in the original report.

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 61, 65-67.

8. **Municipal Corporations § 2.5 (NCI3d) — annexation — immediate effect for one subdivision**

The trial court did not err in granting respondent town's motion to allow immediate effectiveness of an annexation ordinance with respect to one subdivision in the annexed area where the court found that no property owner in the subdivision had taken legal action in opposition to annexation, and no question was raised as to the qualification of the subdivision for annexation.

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 61, 65-67.

APPEAL by petitioners Chapel Hill Country Club, Inc., Ernestine Pendergraph, et al., and D. St. Pierre Du Bose, et al., from Judgment of *Judge Robert L. Farmer* entered 31 August 1988 in ORANGE County Superior Court. Heard in the Court of Appeals 12 September 1989.

*Bayliss, Hudson & Merritt, by Ronald W. Merritt, for petitioner appellant, Chapel Hill Country Club, Inc.*

*Barrett and Associates, by Grainger R. Barrett, for petitioner appellants, Ernestine Pendergraph, et al.*

*Mount White Hutson & Carden, P.A., by James H. Hughes and Daniel E. Garner, for petitioner appellants, D. St. Pierre Du Bose, et al.*

*Ralph D. Karpinos; and Petree Stockton & Robinson, by Kenneth S. Broun and J. Anthony Penry, for respondent appellee.*

COZORT, Judge.

Petitioners are owners or residents of a tract of land, approximately 874 acres in size located in Orange and Durham Counties. On 25 April 1988 the Town Council of Chapel Hill, a municipality with a population exceeding 5,000, adopted an ordinance annexing this tract, referred to as Annexation Area 1. Pursuant to N.C. Gen. Stat. § 160A-50, petitioners appealed to the trial court for review of the Town Council's action. The trial court affirmed the annexation ordinance, and petitioners appealed. We affirm the trial court's judgment.

On 8 December 1986 the Town Council of Chapel Hill (the Council), in keeping with N.C. Gen. Stat. § 160A-49(i), passed a resolution identifying some thirty areas as being under consideration for annexation. The tract of land at issue was among the areas described in the resolution. On 13 January 1988 the Council, in compliance with § 160A-49(a), passed resolutions stating the Town's intent to consider annexation of two areas and fixing 14 March 1988 as the date for a public hearing on the annexation of both areas.

On 8 February 1988 the Council approved an annexation report (the Report) for a tract of land, designated Area 1, extending east of Chapel Hill on both sides of N.C. Highway 54, including "The Oaks II subdivision, Chapel Hill Country Club, portions of the DuBose and Lloyd properties and [the] Pearl Lane-Little John Road area east of Barbee Chapel Road." The Report, prepared by the Town's staff pursuant to N.C. Gen. Stat. § 160A-47, noted that the "Town's general policy, as reflected in annexation decisions in the last 10 years, has been to annex areas when they qualify under State law and the Town can practically extend and finance municipal

CHAPEL HILL COUNTRY CLUB v. TOWN OF CHAPEL HILL

[97 N.C. App. 171 (1990)]

services to the qualifying areas." The Report summarized the statutes dealing with annexation, divided Area 1 into subareas (1a, 1b, and 1c), set out the statutory basis under which each of these subareas qualified for annexation, and contained maps, data, and service plans required by § 160A-47.

On 14 March 1988 at the public hearing, the Town's planning director, an attorney for the Chapel Hill Country Club, a member of the Club's Board of Governors, and approximately ten property owners or their attorneys commented on the Report or spoke about other matters relating to the annexation of Area 1. The Council then referred the matter to the Town Manager and Attorney for further consideration. On 11 April 1988 the Council passed a resolution supplementing and amending the Report initially adopted on 8 February. As amended, the Report incorporated the Town Manager's report dated 11 April 1988, prepared after public comment and a review of tax maps and other data. The Council deferred final action on the annexation of Area 1 until the Town Manager and Town Attorney had conferred again with concerned parties.

On 25 April 1988 the Council passed a resolution that again supplemented and amended the Report. Two changes were made in the proposed area of annexation: Phase B5A of the Oaks III development was deleted from Area 1a and a strip of golf course, previously included in Area 1a, was designated Area 1d. In final form the Report divided Area 1 into four subareas, qualified for annexation as follows:

| Area | Approximate Size | Statutory Basis |
| --- | --- | --- |
| 1a | 227 acres | § 160A-48(c)(3) |
| 1b | 66 acres | § 160A-48(c)(2) and (c)(3) |
| 1c | 566 acres | § 160A-48(d)(2) |
| 1d | 15 acres | § 160A-48(c)(3) |

The Council then adopted an ordinance extending the corporate limits of Chapel Hill to include Area 1, effective 30 June 1988. After affirming this annexation ordinance on 31 August 1988, the superior court granted motions that (1) allowed immediate effectiveness of the annexation ordinance as to the Oaks development portion of Area 1a and (2) stayed the operation of the annexation ordinance as to the remainder of Area 1.

When a petitioner seeks review of an annexation ordinance, the trial court may receive evidence "(1) That the statutory pro-

cedure was not followed, or (2) That the provisions of G.S. 160A-47 were not met, or (3) That the provisions of G.S. 160A-48 have not been met." N.C. Gen. Stat. § 160A-50(f) (1989). Regarding the questions presented on appeal, we note initially that the trial court concluded that the Report and the record of annexation proceedings demonstrated, *prima facie*, substantial compliance with applicable statutes. Thus, the burden was upon petitioners "to show by competent evidence that the . . . [municipality] in fact failed to meet the statutory requirements or that there was irregularity in the proceedings which materially prejudiced their substantive rights." *Dunn v. City of Charlotte*, 284 N.C. 542, 544-45, 201 S.E.2d 873, 875-76 (1974); *accord In re Annexation Ordinance (New Bern)*, 278 N.C. 641, 647, 180 S.E.2d 851, 856 (1971). With this standard of review in mind, we turn to petitioners' numerous assignments of error.

[1] Petitioners contend first that the trial court erred in holding that the Town could properly classify property of the Chapel Hill Country Club as being used for commercial or institutional purposes. Much of the Country Club's property in Area 1a and all of its property in Area 1d consists of its golf course. Petitioners argue that a private golf course can be neither commercial nor institutional property.

N.C. Gen. Stat. § 160A-48 provides in pertinent part that

(a) A municipal governing board may extend the municipal corporate limits to include any area

(1) Which meets the general standards of subsection (b), and

(2) Every part of which meets the requirements of either subsection (c) or subsection (d).

\* \* \* \*

(c) Part or all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which meets any one of the following standards:

(1) Has a total resident population equal to at least two persons for each acre of land included within its boundaries; or

(2) Has a total resident population equal to at least one person for each acre of land included within its boundaries, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage consists of lots and tracts five acres or less in size and such that at least sixty-five percent (65%) of the total number of lots and tracts are one acre or less in size; or

(3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation *are used for residential, commercial, industrial, institutional or governmental purposes,* and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size. [Emphasis added.]

In *Food Town Stores v. City of Salisbury* our Supreme Court held that a little league baseball park operated by a nonprofit corporation may be classified as used for institutional purposes. 300 N.C. 21, 38, 265 S.E.2d 123, 134 (1980). The court noted that

[t]he term "institutional" is not specially defined in the laws governing annexation by cities of more than 5,000 in population. . . . The term "institutional" refers to or pertains to matters originated by an "establishment, organization, or association, instituted for the promotion of some object, [especially] one of public or general utility . . . . Within the context of G.S. 160A-48(c)(3), "institutional" refers to an urban use of land which directly advances the goals or objects of the organization making use of the land.

*Id.* at 38-39, 265 S.E.2d at 134.

Petitioners argue that the "quoted definition of institutional includes an element of public or general utility which is not present in this private, non-profit, country club facility. . . . Unlike a little league baseball facility, this golf course is of little or no benefit to the public or any significant segment thereof." We do not adopt petitioner's interpretation of "institutional." Even if we did, their contention that the Country Club provides no benefit to the public

overlooks evidence tending to support a contrary conclusion. At the public hearing on annexation, Ralph Mason, representing the Board of Governors of the Country Club, said that

> it served the Town by providing jobs with a year-round payroll of thirty people and in the summer additional part-time workers made the payroll 85 people. . . . He said the Club provided a practice golf course for the local high schools and encouraged their use and provide[d] the golf course for local charity drives. . . . Mr. Mason said all members of the community were welcome to join the Country Club.

Mr. Mason's remarks were recorded in the minutes of the 14 March meeting of the Council; a certified copy of those minutes was moved into evidence before the Superior Court as "Plaintiff's [Petitioners'] Exhibit 32."

[2]  Petitioners also argue, in effect, that because the Country Club's property was labeled "recreational" and "conservation/open space," respectively, in a 1977 Comprehensive Land Use Plan and a 1986 Draft Interim Land Use Plan, the Town should be estopped from classifying Country Club property in the Report as being put to institutional use. However, petitioners cite no authority for that proposition, and it is at odds with our case law. This Court has held that the general intent of the annexation statutes is "to provide municipalities with a flexible planning tool." *Lowe v. Town of Mebane*, 76 N.C. App. 239, 243, 332 S.E.2d 739, 742 (1985). The burden is upon petitioners to demonstrate that respondents misclassified land under § 160A-48. *Scovill Mfg. Co. v. Town of Wake Forest*, 58 N.C. App. 15, 19-20, 293 S.E.2d 240, 244 (1982). Petitioners have failed to carry that burden.

[3]  Petitioners next assign as error the trial court's conclusion that Area 1c was properly annexed as a non-urbanized area. In annexing Area 1c, the Town relied on § 160A-48(d), which provides that

> (d) In addition to areas developed for urban purposes, a governing board may include in the area to be annexed any area which does not meet the requirements of subsection (c) if such area either:
>
> > (1) Lies between the municipal boundary and an area developed for urban purposes so that the area developed for urban purposes is either not adjacent

> to the municipal boundary or cannot be served by the municipality without extending services and/or water and/or sewer lines through such sparsely developed area; or
>
> (2) *Is adjacent, on at least sixty percent (60%) of its external boundary, to any combination of the municipal boundary and the boundary of an area or areas developed for urban purposes* as defined in subsection (c).
>
> *The purpose of this subsection is to permit municipal governing boards to extend corporate limits to include all nearby areas developed for urban purposes and where necessary to include areas which at the time of annexation are not yet developed for urban purposes but which constitute necessary land connections between the municipality and areas developed for urban purposes or between two or more areas developed for urban purposes.* [Emphasis added.]

Petitioners concede that if Areas 1a and 1d were properly annexed under § 160A-48(c) then the adjacency test, above, has been met. However, they contend that the Town's annexation of Area 1c is contrary to the plain language of § 160A-48(d) and to the legislature's intent.

Specifically, they argue that Area 1c, an essentially rural, undeveloped tract, is not a "necessary land connection" within the meaning of § 160A-48(d). They submit that uncontroverted, expert testimony before the trial court tended to show that it was not only unnecessary to extend water or sewer lines across Area 1c to serve Areas 1a and 1b but also that "it would be very expensive and illogical." They also submit that expert testimony tended to show that the annexation of Area 1c was unnecessary for the provision of any other municipal services to Areas 1a and 1b. Thus, they argue, annexation of Area 1c violated the purpose of § 160A-48(d), because the unnumbered paragraph at the end of subsection (d) refers to the entire subsection "and not merely to subpart (1) of subsection (d)."

Petitioners' position is not entirely without merit, but it is contrary to the holding in *Southern Glove Mfg. Co. v. City of Newton*, 75 N.C. App. 574, 578, 331 S.E.2d 180, 183, *disc. review denied*, 314 N.C. 669, 336 S.E.2d 401 (1985), and the holding in

*Wallace v. Town of Chapel Hill*, 93 N.C. App. 422, 429, 378 S.E.2d 225, 229 (1989). Petitioners in *Wallace* contended, as do petitioners in the case below, that § 160A-48(d) "requires [that] all non-urban properties 'constitute necessary land connections between the municipality and areas developed for urban purposes or between two or more areas developed for urban purposes.' " *Wallace*, 93 N.C. App. at 429, 378 S.E.2d at 229. Relying on *Southern Glove*, the Court in *Wallace* reiterated the proposition that a municipality may annex non-urban property if it meets the criteria in either (d)(1) or (d)(2). *Id.* at 430, 378 S.E.2d at 230. The municipality need not "show that the non-urban area constitutes a necessary land connection." *Id.* When one panel of this Court "has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been over-turned by a higher court." *In re Harris*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

[4]  Petitioners next assign as error the trial court's conclusions that the Town

> has substantially complied with the requirements of N.C. Gen. Stat. § 160A-48 in determining that the specific subareas of Annexation Area 1 are properly qualified for annexation. Specifically, the court concludes that subareas 1a, 1b, and 1d meet the standards for qualification as areas that are developed for urban purposes . . . .

Petitioners cite *In re Annexation Ordinance (Charlotte)*, 284 N.C. 442, 202 S.E.2d 143 (1974), to support the proposition that a municipality may not divide an annexation area into subareas and qualify each of these pursuant to separate subdivisions of § 160A-48(c).

In 1972 the City of Charlotte adopted an ordinance annexing the Albemarle Road-York Road Area. That area was initially broken down by the City into six "Study Areas," each of which was qualified for annexation pursuant to N.C. Gen. Stat. § 160-453.16(c)(1). *In re Annexation (Charlotte)*, 284 N.C. at 453, 202 S.E.2d at 149. That statute has been superseded by § 160A-48, but, except for a single change not relevant to the case below, the language in subsection (c) of both statutes is identical (see text quoted above). Construing § 160-453.16(c)(1), the Court held

> that the Legislature intended "the area to be annexed" to mean the entire 17,899 acres embraced in the Albemarle Road-

York Road Annexation Area rather than numerous "study areas" into which the area to be annexed has been divided. Not only must the entire annexation area *meet* the requirements of G.S. 160-453.16(c)(1), but even more importantly, the tests to determine whether an area is developed for urban purposes must be *applied* to the annexation area as a whole.

*In re Annexation Ordinance*, 284 N.C. at 456, 202 S.E.2d at 152 (emphasis in original). In dissent Chief Justice Bobbitt found "no valid objection to the annexation proceedings. Since each of the study areas is in full compliance, it follows that the composite of these areas is in full compliance." *Id.* at 457, 202 S.E.2d at 153.

In 1980 our Supreme Court again construed the language of § 160A-48(c). The Court held:

The urban area that a city seeks to qualify for annexation under one of the urban purposes tests set forth in G.S. 160A-48(c)(1)—(3) must be considered as a whole; i.e., as one area and may not be divided into sub-areas or study areas. This requirement, however, does not preclude annexation of intervening undeveloped land pursuant to G.S. 160A-48(d).

*In re Annexation Ordinance (Albemarle)*, 300 N.C. 337, 342, 266 S.E.2d 661, 664 (1980).

More recently, however, our Supreme Court denied review of a decision which affirmed qualification of an annexation area by means of subareas. *Little Red School House, Ltd. v. City of Greensboro*, 71 N.C. App. 332, 338, 322 S.E.2d 195, 198, *disc. review denied and appeal dismissed*, 313 N.C. 514, 329 S.E.2d 392 (1985). This Court approved the following findings and conclusions: "Area M is divided into subareas M-1, M-2, and M-3. Subareas M-1 and M-3 meet the requirements of G.S. 160A-48(c)(1) . . . . Subarea M-2 . . . [complies] with the requirements of G.S. 160A-48(d) . . . ." *Id.*

In *Wallace v. Town of Chapel Hill*, cited above, this Court reviewed an annexation proceeding in which the Town determined that each subarea was " 'developed for urban purposes' by the use of a different standard, either (c)(1), (c)(2) or (c)(3) of N.C.G.S. Sec. 160A-48." *Wallace*, 93 N.C. App. at 426, 378 S.E.2d at 227. In affirming the regularity of the annexation proceeding, this Court, citing *In re Annexation Ordinance (Albemarle)*, stated that the

principles set forth by our Supreme Court are not read by this court to require that *every* non-contiguous subarea a

municipality seeks to qualify as urban property be qualified under the *same* urban purpose test. Instead, *each* such subarea must be considered as a whole and must qualify under *one* of the urban purposes tests set forth in Section 160A-48(c).

*Id.* at 427, 378 S.E.2d at 228 (emphasis in original). Therefore, we are constrained to hold in the case below that the Town's method of qualifying Area 1 fulfilled the requirements of § 160A-48(c). *In re Harris,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

[5] Petitioners next assign as error the trial court's conclusion that the Town has substantially complied with N.C. Gen. Stat. § 160A-47. Petitioners contend that the Town's Plan for Extending Services (the Plan) is fatally deficient. We disagree.

As a prerequisite to annexation, § 160A-47 provides:

A municipality . . . shall make plans for the extension of services to the area proposed to be annexed and shall, prior to the public hearing provided for in G.S. 160A-49, prepare a report setting forth such plans to provide services to such area. The report shall include:

(1) A map or maps of the municipality and adjacent territory to show . . .

\* \* \* \*

b. The present major trunk water mains and sewer interceptors and outfalls, and the proposed extensions of such mains and outfalls . . . .

\* \* \* \*

(2) A statement showing that the area to be annexed meets the requirements of G.S. 160A-48.

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

a. Provide for extending police protection, fire protection, solid waste collection and street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within

the rest of the municipality prior to annexation. A contract with a rural fire department to provide fire protection shall be an acceptable method of providing fire protection. . . .

b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed so that when such lines are constructed, property owners in the area to be annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality . . . .

c. If extension of major trunk water mains, sewer outfall lines, sewer lines and water lines is necessary, set forth a proposed timetable for construction of such mains, outfalls and lines as soon as possible following the effective date of annexation.

The legislative purpose behind our annexation statutes is to assure that in return for the burden of municipal taxes all residents receive the benefit of municipal services. *In re Annexation Ordinance (No. 300-X)*, 304 N.C. 549, 554, 284 S.E.2d 470, 474 (1981). The "minimum requirements" of § 160A-47

are that the City provide information which is necessary to allow the public and the courts to determine whether the municipality has committed itself to provide a nondiscriminatory level of service and to allow a reviewing court to determine after the fact whether the municipality has timely provided such services. If such services are not provided, the residents of the annexed area would be entitled to a Writ of Mandamus requiring the municipality to live up to its commitments. G.S. 160A-49(h) . . . .

. . . We believe that the report need contain only the following: (1) information on the level of services then available in the City, (2) a commitment by the City to provide this same level of services in the annexed area within the statutory period, and (3) the method by which the City will finance the extension of these services.

*In re Annexation Ordinance*, 304 N.C. at 554-55, 284 S.E.2d at 474.

With regard to police and fire protection, petitioners maintain that these minimum requirements have not been met. They cite

the Town's failure to promise additional personnel and equipment. They note, too, expert testimony to the effect that the average response time to a fire alarm in Area 1 would be greater than in the municipality as a whole and that the average response time for police emergencies would decline because the Town's area would increase by nearly ten percent.

As this Court noted in *In re Durham Annexation Ordinance (No. 5791)*, "there are many variables that affect the level of fire protection afforded to different areas of a municipality: height and size of buildings, construction materials, proximity of buildings to one another and street pattern, among others." 66 N.C. App. 472, 480, 311 S.E.2d 898, 903, *disc. review denied*, 310 N.C. 744, 315 S.E.2d 701 (1984). Response time is a factor for the court's consideration, but it is not dispositive "of whether an annexation report reflects plans to provide certain required municipal services 'on substantially the same basis and in the same manner' as in the preannexation City area." *Id.* at 481, 311 S.E.2d at 903; *see also In re Durham Annexation Ordinance (No. 5991)*, 69 N.C. App. 77, 88, 316 S.E.2d 649, 655-56, *disc. review denied and appeal dismissed*, 312 N.C. 493, 322 S.E.2d 553 (1984). Under § 160A-47(3) a municipality's Plan is required to show only that a nondiscriminatory level of services will be provided. *In re Annexation Ordinance (No. 300-X)*, 304 N.C. 549, 555, 284 S.E.2d 470, 474 (1981) (citing *Moody v. Town of Carrboro*, 301 N.C. 318, 328, 271 S.E.2d 265, 271-72 (1980) ).

In its Plan the Town stated:

> The Town will provide patrol and other police services with existing personnel and equipment, which will be sufficient to provide these services on the same basis and in substantially the same manner as for other areas of the Town. Costs will be financed from the General Fund. There is no anticipated need for additional equipment or personnel to serve the area in the next two years.

> * * * *

> Fire department personnel and equipment based at the Headquarters Station on Columbia Street; the Glen Lennox Station; and public safety personnel on patrol in the patrol district including the annexation area will respond to fire calls. . . .

> The Town anticipates entering into a 5-year first-responder contract with the Parkwood Volunteer Fire Department for

CHAPEL HILL COUNTRY CLUB v. TOWN OF CHAPEL HILL

[97 N.C. App. 171 (1990)]

the portion of Area 1 that Parkwood currently serves. Both the Town and the Parkwood Volunteer Fire Department personnel will respond to fire emergency calls from the annexation area.

The contract with the Parkwood Fire Department would include payments by the Town to the volunteer department in accord with G.S. 160A-49.1.

Moreover, the Town's fire chief and police chief testified that services would be provided in Area 1 on substantially the same basis as elsewhere in the municipality. On this issue, the trial court had ample evidence from which to find that the Town complied with § 160A-47.

[6] Regarding the extension of water and sewer services to Area 1, petitioners contend that the Town improperly delegates responsibility to Orange Water and Sewer Authority (OWASA), an independent authority operated pursuant to N.C. Gen. Stat. Chap. 162A. They maintain that OWASA has no defined service area and no written policies "concerning the extension of water [and] sewer services into an area." Thus, they infer that the Town's performance depends "upon a doubtful contingency," making the annexation ordinance invalid. *In re Annexation Ordinance (Jacksonville)*, 255 N.C. 633, 646, 122 S.E.2d 690, 700 (1961).

In *Moody v. Town of Carrboro* the court upheld a Plan which provided for extension of water and sewer lines by OWASA. 301 N.C. 318, 328, 271 S.E.2d 265, 272 (1980). The same procedure was affirmed in *Wallace v. Town of Chapel Hill*, 93 N.C. App. 422, 428-29, 378 S.E.2d 225, 229 (1989). *See also* N.C. Gen. Stat. § 160A-461, which provides for authority for interlocal cooperation; and *Trask v. City of Wilmington*, 64 N.C. App. 17, 26-27, 306 S.E.2d 832, 837 (1983), *disc. review denied*, 310 N.C. 630, 315 S.E.2d 697 (1984), which discusses the desirability of intergovernmental cooperation.

In the case below, the Town's Plan provided that water and sewer

service, as within the present Town limits, will be provided in accord with policies adopted by . . . (OWASA) to be applicable within the existing Town limits and the annexed area. OWASA's operating expenses . . . will be financed from OWASA revenues. . . .

* * * *

Appendix D-6 shows the location of existing major water mains in the vicinity of this area. Major trunk water mains required to make service generally available to this area have already been completed.

The extension of OWASA water services to areas proposed for annexation by the Town of Chapel Hill will be provided in accord with OWASA policies, regulations and standards applicable throughout the entire OWASA service area (which includes the Town of Chapel Hill in its entirety) at the time extensions are made. . . .

Appendix D-7 shows the location of existing sewer outfalls in the vicinity of area 1. Two wastewater collection system improvements are necessary to support the proposed annexation of Area 1. These improvements will be completed within two years of the effective date of annexation.

1. *Improvements for Westernmost Portion of Area 1c.* Gravity sewer service is in close proximity to the western boundary of, but not within, Area 1c. There are two alternatives for making sewer service generally available to the western portion of Area 1c: the extension of a gravity sewer main along NC Highway 54, or the extension of a gravity sewer main near the southern edge of the annexation area. . . .

2. *Improvements in Pearl Lane/Little John Road Area 1b.* The Pearl Lane/Little John Road area cannot be served by conventional extension of the gravity sewer system within the OWASA system. Construction of a small wastewater pumping station and associated force main would be required to serve this area. . . .

   Property owners in the area to be annexed would be able to secure public sewer service from OWASA according to the policies in effect within the Town of Chapel Hill for extending sewer lines to individual lots and subdivisions.

Copies of OWASA documents entitled "Sewer Extension Policy" and "Policy for Extension of Water Service," each of which included a schedule of fees, were appended to the Plan. Also appended to the Plan was an OWASA Report, dated 8 January 1988, on the extension of water and sewer services to Area 1. At trial the executive director and the chief engineer of OWASA testified that water and sewer services would be provided in Area 1 on

the same basis as within the Town and that connection procedures were and would continue to be uniformly applied.

Upon review, the petitioners' other contentions regarding the Town's Plan to extend water and sewer service to Area 1 have been found without basis in law. In light of the documentary evidence and testimony before it, the trial court correctly concluded that the Town substantially complied with § 160A-47.

[7] Petitioners next assign as error the trial court's conclusion that the Town has substantially complied with the procedural requirements of N.C. Gen. Stat. § 160A-49. They contend that the Town's amendment of the Report after the public hearing of 14 March 1988 required a new hearing before the ordinance was adopted. Petitioners focus their attack on the changes made to Area 1a as described in the original Report.

N.C. Gen. Stat. § 160A-49(e) provides in part that the

municipal governing board shall take into consideration facts presented at the public hearing and shall have *authority to amend the report required by G.S. 160A-47 to make changes in the plans for serving the area proposed to be annexed so long as such changes meet the requirements of G.S. 160A-47, provided that if the annexation report is amended to show additional subsections of G.S. 160A-48(c) or (d) under which the annexation qualifies that were not listed in the original report, the city must hold an additional public hearing on the annexation not less than 30 nor more than 90 days after the date the report is amended* . . . . [Emphasis added.]

In his memorandum dated 25 April 1988 (noted above), the Town Manager explained that a final plat of the Oaks III, Phase B5A development was recorded on 22 April 1988, eight days after the public hearing on annexation. The plat subdivided tax map lot 479A-1, previously counted as one lot, into thirty lots. To continue to qualify Area 1a under § 160A-48(c)(3) the Town deleted the approximately twenty-eight acres contained in Oaks III, Phase B5A from the area to be annexed. The Town further concluded that a street right-of-way (Pinehurst Drive) separated a strip of land near Burning Tree Drive from the remainder of Area 1a and required separate qualification of that strip (redesignated Area 1d).

These changes did not bring any new land within the scope of the annexation ordinance. Nor did the changes involve additional

"subsections of G.S. 160A-48(c) or (d), under which the annexation qualifies, that were not listed in the original report . . . ." N.C. Gen. Stat. § 160A-49(e) (1989). Area 1a was originally qualified under § 160A-48(c)(3); Area 1d was qualified under the same subsection.

Petitioners' reliance on *Gregory v. Town of Plymouth*, 60 N.C. App. 431, 299 S.E.2d 232, *disc. review denied*, 308 N.C. 544, 304 S.E.2d 237 (1983) is misplaced. That case dealt with N.C. Gen. Stat. § 160A-37(e), which, for municipalities with a population less than 5,000, is the analogue of § 160A-49(e). As *Gregory* noted, "the relevant inquiry is whether the amendment effected a substantial change to the ordinance, necessitating notice to those affected thereby." *Gregory*, 60 N.C. App. at 433, 299 S.E.2d at 234 (1983). We hold that, in the case below, the Town's amendment made no substantial change in the annexation ordinance and that petitioners were not prejudiced by the absence of a second public hearing.

**[8]** We address, lastly, the petitioners' contention that the trial court erred in granting respondent's post-trial motion to allow immediate effectiveness of the annexation ordinance with respect to the Oaks subdivision portion of Area 1a.

Appeal from the trial court's review of the municipality's annexation proceedings is governed by N.C. Gen. Stat. § 160A-50(h), which provides that the

> appealing party may apply to the superior court for a stay in its final determination, or a stay of the annexation ordinance, whichever shall be appropriate, pending the outcome of the appeal to the appellate division; provided, that the superior court may, with the agreement of the municipality, permit annexation to be effective with respect to any part of the area concerning which no appeal is being made and which can be incorporated into the city without regard to any part of the area concerning which an appeal is being made.

The trial court found that no property owner in the Oaks subdivision had joined petitioners or taken other legal action in opposition to annexation. No question has been raised as to the qualification of the Oaks subdivision for annexation. Thus, the trial court correctly concluded that the Oaks subdivision area could be incorporated into the Town "without regard to the remainder of the annexation area concerning which an appeal is being made."

For the reasons stated above, we hold that petitioners failed to show either that the Town did not meet the statutory requirements for annexation or that some irregularity in the proceedings prejudiced petitioners' rights. The trial court's orders of 31 August 1988 are

Affirmed.

Judges ARNOLD and BECTON concur.