NOLAN v. VILLAGE OF MARVIN

[172 N.C. App. 84 (2005)]

———

WILLIAM J. NOLAN III ET AL., PETITIONERS v. VILLAGE OF MARVIN, A NORTH CAROLINA MUNICIPALITY, RESPONDENT

No. COA04-1169

(Filed 2 August 2005)

## 1. Cities and Towns— annexation—nondiscriminating level of services—additional services not required

The trial court did not err by concluding that respondent municipality's annexation ordinance did not violate public policy even though petitioners contend they receive no additional services despite additional taxation, because: (1) respondent provides independent administrative, engineering, auditing, legal and planning services to its residents; (2) respondent is exploring options for obtaining additional police patrol services and has committed itself to providing its current and future levels of such services to its residents in a nondiscriminatory manner; (3) N.C.G.S. §§ 160A-33 and 160A-35(3) do not require respondent to provide additional services that the current residents of the municipality do not enjoy or to duplicate services already provided to the area to be annexed, but instead a municipality must provide to the annexed area each major municipal service performed within the municipality at the time of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation; and (4) contrary to petitioners' argument, N.C.G.S. § 160A-35(3) does not command municipalities to provide specific services, but ensures that whatever services are provided will be provided in a nondiscriminatory fashion to those areas to be annexed.

**2. Cities and Towns— annexation—public information meeting—procedural requirements**

The trial court did not err by concluding that respondent municipality abided by the procedural requirements for annexation set forth in N.C.G.S. § 160A-37(c1) even though respondent failed to answer questions regarding its motivation to annex the proposed territory during the public informational hearing about the annexation, because: (1) respondent conducted the informational meeting as required by N.C.G.S. § 160A-37(c1) and answered all questions except those concerning its motivations for annexing the territory; and (2) petitioners failed to demonstrate how they had suffered material injury as a result of respondent's failure to answer one question, the answer to which could have no effect on the validity of the proposed annexation.

Judge TYSON dissenting.

Appeal by petitioners from order entered 2 June 2004 by Judge Albert Diaz in Union County Superior Court. Heard in the Court of Appeals 21 April 2005.

*The Brough Law Firm, by Robert E. Hornik, Jr., for petitioners-appellants.*

*Parker, Poe, Adams & Bernstein L.L.P., by R. Bruce Thompson II and Anthony Fox, for respondent-appellee.*

MARTIN, Chief Judge.

Petitioner land owners appeal an order of the trial court affirming involuntary annexation of their property by respondent Village of Marvin. We affirm the order of the trial court.

On 22 September 2003, petitioners filed a petition for review of an annexation ordinance enacted by respondent. The petition alleged, *inter alia*, that respondent had failed to adequately respond to questions regarding the proposed annexation, and that annexation of petitioners' property violated express declarations of public policy as set forth in section 160A-33 of the North Carolina General Statutes. The matter came before the trial court on 3 May 2004. The court, based upon the pleadings, briefs, arguments by counsel and other materials submitted, made the following findings of fact:

1. [Respondent] adopted the annexation ordinance on July 24, 2003. Petitioners William J. Nolan III and Louise C. Hemphill-

NOLAN v. VILLAGE OF MARVIN

[172 N.C. App. 84 (2005)]

Nolan ("the Nolans") filed a petition challenging this annexation on September 22, 2003.

. . . .

5. [Respondent's] Annexation Report and Amended Annexation Report provided information on the level of services [respondent] currently provides. In these reports, [respondent] committed itself to providing substantially the same level of services in the Annexation Area, and it identified how [respondent] will finance the extension of its services into the Annexation Area.

6. [Respondent] provides independent administrative, engineering, auditing, legal and planning services to its residents.

7. After annexation, the Annexation Area will receive services on substantially the same basis and in the same manner as services received elsewhere in [the municipality].

8. . . . [Respondent] is exploring options for obtaining additional police patrol services, and it has committed to providing its current and future levels of such services to its residents in a non-discriminatory manner.

9. [Respondent] conducted an informational meeting under N.C.G.S. § 160A-37(c1). At this meeting, [respondent] representatives declined to answer any questions concerning [its] motivations for annexing the territory. There is no evidence that [respondent] failed to answer any other questions asked.

Based on these findings, the trial court concluded respondent had satisfied statutory requirements regarding the provision of services to the annexation area, and that general policy declarations contained in section 160A-33 of the North Carolina General Statutes created no further procedural steps for respondent, nor created substantive rights for petitioners. The trial court further concluded that petitioners had failed to show any material injury as a result of respondent's refusal to answer questions regarding its motivation for pursuing annexation. The trial court entered an order affirming annexation. Petitioners appeal.

Petitioners argue the trial court erred in affirming annexation on the grounds that (1) such annexation violates state policy, and (2) respondent violated procedural requirements of the annexation

process. Review of an annexation ordinance is limited to resolving the following three issues: (1) whether the annexing municipality has properly complied with the statutory procedures; (2) where the statutory procedures have not been properly followed, whether the petitioners will suffer material injury as a result of such procedural irregularities; and (3) whether the area to be annexed meets the applicable statutory requirements. *See* N.C. Gen. Stat. § 160A-38 (2003); *In re Annexation Ordinance*, 278 N.C. 641, 646-47, 180 S.E.2d 851, 855 (1971).

> Where an appeal is taken from the adoption of an annexation ordinance and the proceedings show *prima facie* that there has been substantial compliance with the statute, the burden is upon the party attacking the annexation to show, by competent evidence, failure on the part of the municipality to comply with the statutory requirements.

*Thrash v. City of Asheville*, 327 N.C. 251, 255, 393 S.E.2d 842, 845 (1990); *In re Annexation Ordinance*, 278 N.C. at 647, 180 S.E.2d at 855-56; *Hayes v. Town of Fairmont*, 167 N.C. App. 522, 605 S.E.2d 717, 718 (2004), *disc. review denied*, 359 N.C. 410, 612 S.E.2d 320 (2005). "Substantial compliance" is defined as compliance with the essential requirements of the statute. *Thrash*, 327 N.C. at 255, 393 S.E.2d at 845. Findings of fact made by the trial court are binding on this Court if supported by the evidence, even where there may be evidence to the contrary. *Hayes*, 167 N.C. App. at 525, 605 S.E.2d at 719.

**[1]** Petitioners argue the annexation at issue violates state policy as declared in section 160A-33 of the North Carolina General Statutes. Section 160A-33 declares "as a matter of State policy" the following:

(1) That sound urban development is essential to the continued economic development of North Carolina;

(2) That municipalities are created to provide the governmental services essential for sound urban development and for the protection of health, safety and welfare in areas being intensively used for residential, commercial, industrial, institutional and government purposes or in areas undergoing such development;

(3) That municipal boundaries should be extended, in accordance with legislative standards applicable throughout the State, to include such areas and to provide the high quality of

governmental services needed therein for the public health, safety and welfare; and

(4) That new urban development in and around municipalities having a population of less than 5,000 persons tends to be concentrated close to the municipal boundary rather than being scattered and dispersed as in the vicinity of larger municipalities, so that the legislative standards governing annexation by smaller municipalities can be simpler than those for larger municipalities and still attain the objectives set forth in this section;

(5) That areas annexed to municipalities in accordance with such uniform legislative standards should receive the services provided by the annexing municipality in accordance with G.S. 160A-35(3).

N.C. Gen. Stat. § 160A-33 (2003). Section 160A-35(3), in turn, requires an annexing municipality to prepare a "statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation." N.C. Gen. Stat. § 160A-35(3) (2003). Such plans must:

a. Provide for extending police protection, fire protection, solid waste collection and street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. A contract with a rural fire department to provide fire protection shall be an acceptable method of providing fire protection. If a water distribution system is not available in the area to be annexed, the plans must call for reasonably effective fire protection services until such time as waterlines are made available in such area under existing municipal policies for the extension of waterlines. A contract with a private firm to provide solid waste collection services shall be an acceptable method of providing solid waste collection services.

b. Provide for extension of water mains and sewer lines into the area to be annexed so that property owners in the area to be annexed will be able to secure public water and sewer services according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions. If the

municipality must, at its own expense, extend water and/or sewer mains into the area to be annexed before property owners in the area can, according to municipal policies, make such connection to such lines, then the plans must call for contracts to be let and construction to begin on such lines within one year following the effective date of annexation. In areas where the installation of sewer is not economically feasible due to the unique topography of the area, the municipality may agree to provide septic system maintenance and repair service until such time as sewer service is provided to properties similarly situated.

c. Set forth the method under which the municipality plans to finance extension of services into the area to be annexed.

*Id.* Petitioners contend sections 160A-33 and 160A-35(3) make clear that the provision of governmental services by municipalities "to help foster growth and economic development" is the "primary public policy behind the involuntary annexation ordinance." They argue that, in the instant case, respondent will provide "no additional services whatsoever" to the annexed property, and that respondent has no current plan to provide such services. Because petitioners will receive no additional services, they contend the present annexation ordinance violates public policy and must be nullified. Petitioners' argument fails on several grounds.

First, the trial court found that respondent provides "independent administrative, engineering, auditing, legal and planning services to its residents." In addition, the trial court found that respondent is "exploring options for obtaining additional police patrol services and it has committed itself to providing its current and future levels of such services to its residents in a non-discriminatory manner." Petitioners made no exception to these findings of fact, and this Court is bound by them. *Hayes*, 167 N.C. App. at 525, 605 S.E.2d at 719. Thus, the trial court found that respondent will provide some additional services to the area to be annexed, notwithstanding petitioners' claim they will receive "no additional services whatsoever."

Second, we agree with the trial court that sections 160A-33 and 160A-35(3) do not require respondent to provide additional services that the current residents of the municipality do not enjoy, or to duplicate services already provided to the area to be annexed. Rather, under the plain language of the statute, a municipality must provide to the annexed area "each major municipal service performed within the municipality at the time of annexation . . . on substantially the

same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation." N.C. Gen. Stat. § 160A-35(3)(a). Contrary to petitioners' argument, section 160A-35(3) does not command municipalities to provide certain specific services, but ensures that whatever services *are* provided, are provided in a non-discriminatory fashion to those areas to be annexed. " 'Providing a *nondiscriminating* level of services within the statutory time is all that is required.' " *Greene v. Town of Valdese*, 306 N.C. 79, 87, 291 S.E.2d 630, 635 (1982) (quoting *Moody v. Town of Carrboro*, 301 N.C. 318, 328, 271 S.E.2d 265, 272 (1980) ("The plan details what services are provided in the Town and states that all such services will be provided in the annexed area. Providing a nondiscriminating level of services within the statutory time is all that is required")); *see also Parkwood Assn., Inc. v. City of Durham*, 124 N.C. App. 603, 607, 478 S.E.2d 204, 206 (1996) (stating that, "The City detailed the police and fire services now available to city residents and committed to provide the same services to the annexed area. The statute and case law require no more"), *disc. review denied*, 345 N.C. 345, 483 S.E.2d 175 (1997); *Chapel Hill Country Club v. Town of Chapel Hill*, 97 N.C. App. 171, 184-85, 388 S.E.2d 168, 176 (holding that the Town of Chapel Hill complied with the annexation statute where the annexation report called for the annexed area to be served by a volunteer fire department on a contract basis in the same manner as service provided to rest of the town), *disc. reviews denied*, 326 N.C. 481, 392 S.E.2d 87-88 (1990).

Here, the trial court found that "[a]fter annexation, the Annexation Area will receive services on substantially the same basis and in the same manner as services received elsewhere in the [municipality]" and that respondent "has committed to providing its current and future levels of such services to its residents in a non-discriminatory manner." Thus, the trial court properly concluded that respondent had satisfied all statutory requirements regarding the provision of services to the annexed area. *See In re Annexation Ordinance*, 304 N.C. 549, 555, 284 S.E.2d 470, 474 (1981) ("We believe that the [annexation] report need contain only the following: (1) information on the level of services then available in the City, (2) a commitment by the City to provide this same level of services in the annexed area within the statutory period, and (3) the method by which the City will finance the extension of these services").

We are not unsympathetic to petitioners' contention they will receive very few additional services despite additional taxation. We

are, however, bound by the plain language of the statute and case precedent. Petitioners must look to the General Assembly, and not the courts, for relief in such matters. We overrule petitioners' first assignment of error.

[2] Petitioners further contend respondent failed to abide by procedural requirements for annexation set forth in section 160A-37(c1) of the North Carolina General Statutes. Specifically, petitioners assert that respondent failed to answer questions regarding its motivation to annex the proposed territory during the public informational hearing about the annexation. As a result of respondent's failure to answer these questions, petitioners argue the annexation ordinance should be nullified. We do not agree.

Section 160A-37(c1) provides as follows:

Public Informational Meeting.—At the public informational meeting a representative of the municipality shall first make an explanation of the report required in G.S. 160A-35. Following such explanation, all persons resident or owning property in the territory described in the notice of public hearing, and all residents of the municipality, shall be given the opportunity to ask questions and receive answers regarding the proposed annexation.

N.C. Gen. Stat. § 160A-37(c1) (2003).

The trial court found that respondent conducted the informational meeting as required by section 160A-37(c1) and answered all questions except those concerning its motivations for annexing the territory. Petitioners argue this failure to answer questions regarding its motivation invalidates the ordinance. In order to invalidate an annexation based on procedural violations, however, petitioners must demonstrate material injury. *See* N.C. Gen. Stat. § 160A-38(a) (2003); *Sonopress, Inc. v. Town of Weaverville*, 149 N.C. App. 492, 507, 562 S.E.2d 32, 41, *disc. review denied*, 355 N.C. 751, 565 S.E.2d 671 (2002). Here, the trial court concluded, and we agree, that petitioners have failed to demonstrate how they have suffered material injury as a result of respondent's failure to answer one question, the answer to which could have no effect on the validity of the proposed annexation. We overrule this assignment of error.

The order affirming annexation is affirmed.

Affirmed.

Judge LEVINSON concurs.

Judge TYSON dissents.

Tyson, Judge dissenting.

The majority's opinion holds respondent's annexation ordinance satisfies the statutory and case law requirements and affirms the trial court's order. I respectfully dissent.

## I. Legislative Intent

Our Supreme Court stated in *Carolina Power & Light Co. v. City of Asheville*:

> "The primary rule of statutory construction· is that the intent of the legislature controls the interpretation of a statute." *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972). The foremost task in statutory interpretation is " 'to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise.' " *Spruill v. Lake Phelps Vol. Fire Dep't, Inc.*, 351 N.C. 318, 320, 523 S.E.2d 672, 674 (2000) (quoting *Turlington v. McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988)).

358 N.C. 512, 518, 597 S.E.2d 717, 722 (2004).

In 1957, the General Assembly established a Municipal Government Study Commission ("the Commission") to analyze the issue of involuntary annexation. H.R. 1434, Gen. Assem., Reg. Sess. (N.C. 1957) ("It shall be the duty of the Commission to make a detailed and comprehensive study of the problems of municipal government in North Carolina which may include . . . . The procedures, powers and authority which are granted by the General Assembly and are available to municipalities that govern and limit the ability of municipal government to provide for orderly growth, expansion and sound development."). The Commission issued two reports in 1958 and 1959. Municipal Government Study Commission, Report dated 1 November 1958; Municipal Government Study Commission, Report dated 26 February 1959. The Commission recognized that annexation was intended to spur and foster economic growth and development and to provide urban services for rapidly developing areas. The Commission also acknowledged that municipalities should not be allowed to tax without providing services to promote development.

> When a city expands its boundaries, either to take in developed land or land ripe for development, it must be prepared to provide

services of a quality needed where population density is high. If the land taken does not receive such services, at the time of annexation or shortly thereafter, the impact of municipal taxes discriminates against the landowner.

Commission Report dated 1 November 1958, p.11.

As a matter of State policy, N.C. Gen. Stat. § 160A-33(3) (2003) requires "municipal boundaries should be extended, in accordance with legislative standards applicable throughout the State, to include such areas and to provide the high quality of governmental services needed therein for . . . public health, safety and welfare . . . ."

In N.C. Gen. Stat. § 160A-48, "the General Assembly has carefully specified the standards which must be met in order for any area to be annexed, so as to prevent municipalities from extending their boundaries arbitrarily or without due regard for the policy, reasons, and standards mandated by the legislature." *Carolina Power & Light Co.*, 358 N.C. at 516, 597 S.E.2d at 720.

In *In re Annexation Ordinance*, our Supreme Court also stated:

The *central purpose* behind our annexation procedure is to assure that, *in return for the added financial burden of municipal taxation, the residents receive the benefits of all the major services available to municipal residents*. The minimum requirements of the statute are that the *City provide information* which is necessary to allow *the public* and the courts to determine whether the municipality has committed itself to provide a nondiscriminatory level of service *and* to allow a reviewing court to determine after the fact *whether the municipality has timely provided such services*.

304 N.C. 549, 554, 284 S.E.2d 470, 474 (1981) (internal citations omitted) (emphasis supplied); *see also Bali Co. v. City of Kings Mountain*, 134 N.C. App. 277, 284, 517 S.E.2d 208, 213 (1999) ("The underlying legislative purpose is to assure that annexed residents will receive all major city services in return for the additional city taxes.") (citation omitted); *Parkwood Assn, Inc. v. City of Durham*, 124 N.C. App. 603, 606, 478 S.E.2d 204, 206 (1996) ("The purpose of the statute is to insure that, in return for the financial burden of city taxes, the annexed residents receive all major city services.") (citation omitted), *disc. rev. denied*, 345 N.C. 345, 483 S.E.2d 175 (1997). The statutes make clear and our Courts have held that a fundamental

requirement of involuntary annexation is the annexing municipality will provide municipal services to the area annexed.

> Involuntary annexation is by its nature a harsh exercise of governmental power affecting private property and so is properly restrained and balanced by legislative policy and mandated standards and procedure. Annexation is initiated upon the decision of a municipal governing board to extend the municipal corporate limits, and upon challenge by a property owner, the extent and implementation of this decision must comply with legislative intent.

*Carolina Power & Light Co.*, 358 N.C. at 515, 597 S.E.2d at 720.

The record indicates respondent does not offer police, fire, streetlight, solid waste, street maintenance, water and sewer, animal control, or parks and recreation services to its residents. Three administrators work part-time for twelve hours per week. Respondent contracts for planning services, engineering services, an auditor, and an attorney. It formerly contracted with the county sheriff's department, but the record shows the contract was not renewed. While respondent will not discriminate between "services" provided to current residents and those located in the annexed area, petitioners already pay for and receive all such "services" from other sources. The only new "service" respondent will provide residents in the annexed area is an additional annual tax bill. *See In re Annexation Ordinance*, 304 N.C. at 554, 284 S.E.2d at 474.

Respondent's plan does not comply with the plain legislative intent and purpose behind involuntary annexation. *Carolina Power & Light Co.*, 358 N.C. at 515, 597 S.E.2d at 720 ("Annexation is initiated upon the decision of a municipal governing board to extend the municipal corporate limits, and upon challenge by a property owner, the extent and implementation of this decision must comply with legislative intent."). There is no evidence the annexation is intended to spur and foster economic growth and development or to provide urban services not currently available to the affected residents. *See* Commission Reports dated 1 February 1958 and 26 February 1959. Respondent's elected officials expressly refused to answer when asked about respondent's motivations to annex during the public hearing.

Respondent has not shown *any* benefit petitioners will receive that is not currently provided in return for the extra tax burden. While

petitioners will receive the same "services" provided to current residents, our inquiry does not end there. Petitioners already receive and pay for such services from other sources.

## II. Services Offered

The majority's opinion holds respondent's proposed annexation satisfies the statutory requirements pursuant to N.C. Gen. Stat. § 160A-35. The crux of its holding is N.C. Gen. Stat. § 160A-35(3) solely requires a municipality to provide to the annexed area "each major municipal service performed within the municipality at the time of annexation . . . on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation."

The majority's opinion cites several cases to support the notion that respondent need only provide the same level of no services to petitioners as current residents receive. *See In re Annexation Ordinance*, 304 N.C. at 555, 284 S.E.2d at 474 ("We believe that the report need contain only the following: (1) information on the level of services then available in the City, (2) a commitment by the City to provide this same level of services in the annexed area within the statutory period, and (3) the method by which the City will finance the extension of these services.") (citation omitted).

However, in these and similar cases, each municipality proposing to extend its boundaries offered substantial, significant, and numerous new services not currently provided to the annexed areas. *Id.* at 551-54, 284 S.E.2d at 472-74 (police, fire, street maintenance, garbage collection, and water and sewer services to be provided); *Greene v. Town of Valdese*, 306 N.C. 79, 86-87, 291 S.E.2d 630, 635 (1982) (water and sewer lines or septic systems extended to annexed area); *Parkwood Assn., Inc.*, 124 N.C. App. at 607, 478 S.E.2d at 206 ("[F]ire and police service will be provided to the annexation area on substantially the same bas[is] and in the same manner as provided in the rest of the City."); *Chapel Hill Country Club v. Town of Chapel Hill*, 97 N.C. App. 171, 184-85, 388 S.E.2d 168, 176 (1990) (police, fire, water and sewer services provided to annexed area); *Matheson v. City of Asheville*, 102 N.C. App. 156, 161-68, 402 S.E.2d 140, 143-47 (1991) (police, fire, garbage collection, water and sewer service provided to annexed area); *In re Annexation Ordinance*, 303 N.C. 220, 231, 278 S.E.2d 224, 231 (1981) (police, fire, recreation, water and sewer services, and street maintenance provided to annexed area). Respondent's additional "services" at issue here are insignificant and

NOLAN v. VILLAGE OF MARVIN

[172 N.C. App. 84 (2005)]

offer affected residents solely an additional tax bill for bureaucratic services currently provided to and paid for by residents in the annexed areas.

### III. Purpose of the Statute

The legislative purpose and intent behind the statutes governing involuntary annexation is to create and foster economic growth and development and make urban services available to developing areas. *See* Commission Reports dated 1 November 1958 and 26 February 1959. Previous involuntary annexation cases required the introduction of substantial municipal services to the areas subject to involuntary annexation. While respondent is not discriminating between current residents and petitioners, those services are solely administrative and duplicative. The only new "service" respondent intends on providing is another annual *ad valorem* tax bill. Respondent's plan does not satisfy the purpose and intent of our statutes.

### IV. Conclusion

Respondent's "harsh exercise" of involuntary annexation offers petitioners nothing in return. *Carolina Power & Light Co.*, 358 N.C. at 515, 597 S.E.2d at 720. Respondent demands the privileges of taxation and involuntary annexation without accepting the responsibility for providing needed urban or meaningful municipal services. *In re Annexation Ordinance*, 304 N.C. at 554, 284 S.E.2d at 474. Respondent's purported involuntary annexation is a flagrant violation of the plain language, intent, and purpose of the statute and supporting case law.

Respondent's plan gives new meaning to the phrase "taxation without representation" and adds to that phrase "or anything else." *See e.g.,* The Declaration of Independence para. 1 (U.S. 1776); *see also Commissioners v. Henderson*, 163 N.C. 114, 120, 79 S.E. 442, 444 (1913) ("Taxation without representation often leads to the exercise of arbitrary and even despotic power, and is not tolerated or permitted in our system of government."). Respondent's illegal conduct is exacerbated by its refusal to answer petitioners' questions at a statutorily required public hearing and denial to petitioners of minimal due process. N.C. Gen. Stat. § 160A-37(c)(1) (2003).

The trial court's order affirming respondent's involuntary annexation of petitioners' property should be reversed. I respectfully dissent.